# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00638-CV
## NO. 03-01-00639-CV

**Manuel E. Saavedra, Appellant**

**v.**

**Debra Kay Schmidt, Appellee**

**&**

**Texas Department of Protective and Regulatory Services, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NOS. FM004275 & FM001272, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

---

This jurisdictional dispute between two sister state courts over a custody determination falls

squarely within the Uniform Child Custody Jurisdiction and Enforcement Act (the UCCJEA).[1] *See* Tex.

Fam. Code Ann. '' 152.001-.317 (West 2002). Custody proceedings were initiated in the superior court

---

[1] The UCCJEA is the successor statute to the Uniform Child Custody Jurisdiction Act (the UCCJA). The National Conference of Commissioners on Uniform State Laws adopted the UCCJEA in 1997 to (1) address inconsistent interpretations of the UCCJA, (2) provide clearer standards for exercising jurisdiction, and (3) provide a remedial process to enforce interstate child custody determinations. Uniform Child-Custody Jurisdiction & Enforcement Act (UCCJEA), 9 U.L.A. 649-50 (1999) (Prefatory Note). The Texas Legislature amended the family code and replaced the UCCJA with the UCCJEA in 1999. Uniform Child Custody Jurisdiction & Enforcement Act, 76th Leg., R.S., ch. 34, ' 1, 1999 Tex. Gen. Laws 52. Throughout this opinion, we refer to Texas=s version of the UCCJEA, which is substantially identical to the uniform Act, unless we indicate otherwise.

of California, San Joaquin County (the California court) in 1993 when appellee Debra Kay Schmidt filed for separation and then for divorce from appellant Manuel E. Saavedra. Initially, Schmidt was awarded physical custody of the children, while Saavedra was granted only supervised visitation. Years later, Schmidt fled to Texas with the children in violation of the California court=s orders. Incensed by Schmidt=s conduct, the California court awarded sole legal custody of the children to Saavedra, a convicted child molester who had never enjoyed unsupervised visitation with the children; it further ordered no contact between Schmidt and the children. Following a series of legal proceedings and allegations of unseemly conduct by the parents, the Texas Department of Protective and Regulatory Services involved itself in the dispute. A Texas court assumed temporary emergency jurisdiction and entered temporary orders regarding the placement of the children. *See id.* ' 152.204. Following the directives of the UCCJEA, the Texas court attempted to communicate on several occasions with the California court, which enjoyed exclusive continuing jurisdiction under the Act. *See id.* '' 152.204(d), .202. An extraordinary twist in this case not contemplated by the UCCJEA has been the California court=s continued refusal to communicate with the Texas court regarding its concerns for the protection of these children. Despite its best efforts, the Texas court was unable to secure an acknowledgment from the California court that upon their return to California, the children=s best interests would be addressed and they would not be placed in the home of Saavedra before that court required a complete home study and formulated a transition plan. Without such assurance, the Texas court refused to enforce the California order and entered additional orders regarding the custody of the children; those orders are the subject of this appeal.

Saavedra asserts that the Texas court erred in refusing to enforce the orders issued by the California court and lacked jurisdiction to modify those orders or enter new orders because exclusive continuing jurisdiction remained in California. The attorney ad litem for the children suggests that the Texas court could assume jurisdiction under the Hague Convention and could properly modify the California order. We reject the ad litem=s arguments and conclude that the trial court lacked jurisdiction to modify the California orders; however, we construe the orders as temporary orders rendered pursuant to the Texas court=s continued exercise of temporary emergency jurisdiction. Because this Court is generally without jurisdiction to consider appeals of temporary orders, *see id*. ' 105.001(e) (West 2002), we dismiss this appeal for want of jurisdiction.

**BACKGROUND**

Saavedra, a Chilean citizen, married Schmidt in California in June 1991. The parties separated in August 1993. Under the temporary orders in effect for almost four years, Schmidt and Saavedra maintained joint legal custody of their two young daughters, but Schmidt was awarded primary physical custody. Saavedra was granted only supervised visitation, presumably because of a recent conviction for child molestation involving a family member.[2] Both parties were prohibited from removing the

---

[2] Although the record filed with this Court does not include the details of this criminal conviction, it appears that Saavedra was convicted of sexually molesting Schmidt=s twelve-year-old niece in California in 1992. He was placed on probation for the offense but continued to register as a sex offender.

girls from California without prior approval from the other parent or the California court. In August 1997, Schmidt filed a petition in the California court seeking dissolution of the marriage.

Shortly after filing for divorce, Schmidt moved to Texas with the children without providing notice to Saavedra or the California court. Once Schmidt=s whereabouts were discovered, she was served with an order to appear in the California court for further custody proceedings. In April 1999, the dispute was referred to mediation. In the meantime, Saavedra and Schmidt agreed to maintain joint legal custody of the children, but Saavedra continued to be limited to supervised visitation until the date of mediation. On May 6, Schmidt filed in California a petition seeking modification of the custody and visitation arrangements; she also asked the California court to decline jurisdiction and transfer the matter to Texas. The California court refused to relinquish jurisdiction and set the modification hearing for July 29. After several continuances, the hearing commenced on October 15, 1999. Although the court had ordered her to produce the children, neither Schmidt nor the girls were present at the hearing. Schmidt=s counsel appeared on her behalf. Following the hearing, the California court changed the temporary orders to award sole physical and legal custody of the children to Saavedra, and ordered that Schmidt have no contact with the children (the October 1999 order).[3] The California court=s decision was based in part on Schmidt=s failure

---

[3] The order was later modified after Schmidt apprised the court of a California family code statute that provides: ANo person shall be granted physical or legal custody of, or unsupervised visitation with, a child if the person is required to be registered as a sex offender . . . where the victim was a minor, . . . unless the court finds that there is no significant risk to the child and states its reasons in writing or on the record.@ Cal. Fam. Code ' 3030(a) (West Supp. 2002). The California court accordingly included the special findings mandated by the statute, concluding that Saavedra poses no significant risk to the children based on the evidence in the record, including Saavedra=s sex offender program counselor=s opinion that Saavedra is Aat minimal risk of reoffending as long as he maintains sobriety.@

to comply with its orders that she not remove the children from its jurisdiction.[4] Schmidt was again ordered

to return the children to California, which she refused to do.

---

[4] In its order, the California court stated that its decision was mandated by the following findings:

1.   [Schmidt] has failed to comply with prior court orders relating to the children.

2.   [Schmidt] has refused to allow supervised visits with the respondent, father.

3.   [Schmidt] has fled the jurisdiction to the [sic] defeat the respondent, father=s visitation rights.

4.   [Schmidt] has falsely claimed that respondent, father, raped her.

5.   [Schmidt] has attempted to have respondent, father, deported.

6. [Schmidt] has engaged in child alienation by telling the children the respondent, father, is a bad person and by keeping the children away from him.

7. The respondent, father is willing to share the children with the petitioner, mother and the mother is not willing to allow father to visit the children.

8. [Schmidt] has agreed to share parenting orders with no intent to carry out that agreement or comply with those orders.

In February 2000, the Texas Department of Protective and Regulatory Services (the Department) filed an original petition affecting the parent-child relationship in Travis County. The Texas court awarded temporary managing conservatorship to the Department after finding an immediate need for the issuance of temporary orders and the removal of the girls from the home of Schmidt.[5] In June, Saavedra responded to the Department=s suit by filing a special appearance, plea to the jurisdiction, request for court to decline jurisdiction, and an original answer. Saavedra also filed a request to register the California court=s October 1999 order and a petition to enforce it by delivering the children to him. *See id.* ' 152.305.

---

[5] It appears that California was attempting to extradite Schmidt to face criminal charges for child concealment, and while the California court had informed the Texas court that it would be inappropriate to return the children to Saavedra, no other arrangements were in place.

On July 5, 2000, the trial court held a chapter 262 hearing, *see id.* ' 262.201 (West 2002), and considered Saavedra=s enforcement action. During the hearing, the trial court judge informed the parties that she had attempted to communicate with the California court pursuant to section 152.112 of the UCCJEA. *See id.* ' 152.112 (West 2002). The judge remarked that during her initial conversation with Commissioner Robin Appel,[6] the judge presiding over the dispute in California, the commissioner agreed to review the file, consider the big picture and the needs of the children, and call the Texas judge the following day.[7] Nine months later, the Texas judge had not heard from the California judge, and subsequent requests for court documents had gone unanswered. The Texas judge remarked that the California court had failed to consider the best interests of the children or to conduct a thorough home study before awarding sole custody of the children to Saavedra, despite his conviction for sexual molestation of a young girl. The trial court thus announced that it was assuming temporary emergency jurisdiction of the children who were living in Texas; the court then appointed the Department and Schmidt joint temporary managing conservators, and granted Saavedra supervised visitation.

Following the July 5 hearing in Texas, an ex parte hearing was held in the California court on Saavedra=s application to modify the October 1999 custody order. The court modified its earlier order by

---

[6] Commissioner Appel=s role in California is equivalent to the role of a family court master or associate judge in Texas.

[7] The record filed with this Court includes a memorandum prepared by Judge Meurer, the Texas judge, recording the details of her conversation with Commissioner Appel. *See* Tex. Fam. Code Ann. ' 152.110(f).

directing that the children be placed with the Alameda County Child Protective Services[8] (CPS) upon their return to California. The modified order stated that the California court continues to maintain exclusive jurisdiction under the UCCJEA. At no point did the California court mention the best interests of the children, *see* Cal. Fam. Code ' 3020 (West Supp. 2002), or require an investigation to assure their safety in Saavedra=s care. Nor did the California court advise the Texas court of this modification.

In August 2000, Saavedra filed with the Texas court a motion for further orders, a plea to the jurisdiction, and a request for the Texas court to decline jurisdiction regarding the custody rights of these parents. Saavedra attached a copy of the California court=s modified custody order, directing that the children be placed with the Alameda County CPS upon their return to California. A hearing was held on August 14, during which the Texas court expressed its dissatisfaction with the Alameda County CPS=s Awoefully inadequate@ home studies, the failure of the California court=s orders to address the best interests of the children, and the California court=s continuing refusal to communicate with the Texas court. On that same day, the Texas court signed the temporary order memorializing its earlier ruling following the July 5 hearing. This temporary order, dated August 14, 2000, was to remain in effect for one year or until the California court entered a final decree of divorce. In December 2000, although it still had made no attempt to communicate with the Texas court, the California court rendered a final judgment of dissolution of marriage, in which it merely affirmed the Acurrent custody order.@

---

[8] It appears that Saavedra had moved from San Joaquin County to Alameda County by this time.

In May 2001, Saavedra filed an amended petition for enforcement of child custody determination, requesting that the Texas court grant immediate physical custody of the girls to the Alameda County CPS. The following month, the attorney ad litem appointed by the Texas court to represent the children filed a motion asking the Texas court to assume jurisdiction of this custody dispute and to modify both the California court=s order and the Texas court=s temporary order. The Texas court held a hearing on June 25, 2001 on Saavedra=s petition for enforcement and the ad litem=s motion to assume jurisdiction and modify the existing custody orders.

At the hearing, the trial court heard from several witnesses, including Anna Warde, a case worker with the Department. Warde opined that the home study conducted by the Alameda County CPS was Aprobably to date the worse [sic] home study I=ve ever seen.@ According to Warde, the home study was based entirely on information supplied to the investigating agency by Saavedra himself. Not only did it appear that the Alameda County CPS had performed an inadequate home study, but the California court still refused to communicate or cooperate with the Texas trial court, causing the Texas judge to exclaim in frustration: AIn my years on the Bench, I have not experienced a situation where I have not had a Court respond to my requests, or attempt to cooperate with an agency for the best interest of the children; which makes me question whether they have ever attempted to consider fully the best interest of these children in light of all the changes that have occurred.@

Faced with these circumstances, the Texas court signed two orders on September 20, 2001, memorializing its rulings following the June 25 hearing. The combined effect of the orders was to deny Saavedra=s petition for enforcement, name Schmidt as sole managing conservator of the children and

Saavedra as possessory conservator, and mandate that all prior orders of the Texas court remain in full force and effect. Saavedra=s complaints about the two orders have been consolidated on appeal.

**DISCUSSION**

Though he raises a number of issues on appeal, Saavedra essentially asks this Court to determine (1) whether the Texas trial court exceeded its jurisdiction in entering the two September 2001 orders and (2) whether the court erred in refusing to enforce the California custody orders. The Texas court relied on three grounds for exercising jurisdiction: (1) Texas had become the home state of the children; (2) the trial court was exercising temporary emergency jurisdiction; and (3) the trial court could properly exercise modification jurisdiction because this state is a more appropriate or convenient forum for addressing the needs of the children:

> The Court further finds that DEBRA KAY SCHMIDT has been a domiciliary of the State of Texas and a resident of Travis County for more than 6 consecutive months immediately before the commencement of this child custody proceeding. During this time, the children have lived with DEBRA KAY SCHMIDT pursuant to orders of this court . . . .

> The Court further finds that this court has invoked temporary emergency jurisdiction over the parties and subject matter of this suit under the authority of Texas Family Code ' 152.204. . . . The Court further finds that this Court is a more appropriate forum to consider the child custody issues pertaining to the children the subject of this suit and that it is appropriate for this Court to proceed with this modification action.

In refusing to enforce the California court=s custody determinations, the Texas court not only relied on its assumption of temporary emergency jurisdiction, but also referred to the parties= agreement to

**11**

be bound by the Hague Convention on the Civil Aspects of International Child Abduction (the Convention), Oct. 25, 1980, 19 I.L.M. 1501,[9] suggesting that the Convention provides an additional basis for its refusal to enforce the California court orders:

> The Court further finds that by its incorporation of all prior orders, the California Judgment further requires that the provisions of the prior Order Pursuant to Stipulation rendered on or about April 21, 1995 (and filed on April 26, 1995) shall apply to MANUEL SAAVEDRA and DEBRA KAY SCHMIDT. That Order requires that MANUEL SAAVEDRA and DEBRA KAY SCHMIDT Ashall abide by the 1980 Hague Convention on the Civil Aspects of International Child Abductions and the International Child Abduction Remedies Act (P/L/ 100-300), and that these laws may be used to enforce any custody disputes in regard to the Stipulation filed with the Superior Court of California, County of San Joaquin.@

The issues raised on appeal are governed by the UCCJEA, adopted by Texas in 1999. Uniform Child Custody Jurisdiction & Enforcement Act, 76th Leg., R.S., ch. 34, ' 1, 1999 Tex. Gen. Laws 52. The UCCJEA is the successor statute to the Uniform Child Custody Jurisdiction Act ( the UCCJA) and shares its goal of resolving custody disputes between geographically separated parents.

---

[9] On April 26, 1995, the California court issued an order pursuant to a stipulation signed by Schmidt and Saavedra, in which they agreed to be bound by the terms of the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act. *See* 42 U.S.C.A. '' 11601-11610 (West 1995 & Supp. 2002). Presumably, the parties entered into this agreement because Saavedra is a citizen of Chile and a permanent resident of the United States.

*Phillips v. Beaber*, 995 S.W.2d 655, 659 & n.2 (Tex. 1999); *In re McCoy*, 52 S.W.3d 297, 302 (Tex. App.CCorpus Christi 2001, orig. proceeding).  The UCCJA was designed to:

(1)  Avoid jurisdictional competition and conflict with courts of other States in matters of child custody . . . ;

(2)  Promote cooperation with the courts of other States to the end that a custody decree is rendered in that State which can best decide the case in the interest of the child;

(3)  Discourage the use of the interstate system for continuing controversies over child custody;

(4)  Deter abductions of children;

(5)  Avoid relitigation of custody decisions of other States in this State; and

(6)  Facilitate the enforcement of custody decrees of other States.

Uniform Child-Custody Jurisdiction & Enforcement Act (UCCJEA) ' 101 cmt., 9 U.L.A. 657 (1999).

## **Modification**

Saavedra complains that the trial court erred in exercising subject matter jurisdiction over the children to modify the California custody orders.  He asserts that California had exclusive continuing jurisdiction pursuant to the UCCJEA, and that California had expressly refused to decline that jurisdiction.  Because subject matter jurisdiction is a question of law, we apply a de novo standard of review.  *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).  Generally, a court that has jurisdiction to make an initial child custody determination retains exclusive continuing jurisdiction over future custody disputes.  Tex. Fam. Code Ann. ' 152.202.  AInitial child custody determination@ refers to the first child

custody order concerning a particular child. *Id.* ' 152.102(8). Under the UCCJEA, a court has jurisdiction to make an initial child custody determination if the state in which the proceeding is initiated is (1) the home state of the child on the date of the commencement of the proceeding, or (2) was the home state of the child within six months before the commencement of the proceeding and a parent continues to live in that state. *Id.* ' 152.201. In this case, it is undisputed that California was the home state of the children and properly exercised jurisdiction in making the initial child custody determination.

Generally, the court that made the initial child custody determination (in this case, the California court) will retain exclusive continuing jurisdiction over ongoing custody disputes, unless (1) that court determines that the children and one parent no longer have a significant connection with the state and substantial evidence is no longer available there concerning the children=s care, protection, training, and personal relationships; or (2) either that court or a court of another state determines that the children and the children=s parents no longer reside in the state. *Id.* ' 152. 202. Here, the California court made no such determination. And because the father continues to reside in California, the Texas court could not have determined that the children and the children=s parents no longer reside in California. *See id.*; UCCJEA ' 202 cmt. 1, 9 U.L.A. 674; *see also In re Bellamy*, 67 S.W.3d 482, 484 (Tex. App.CTexarkana 2002, no pet.) (holding that so long as one parent lives in original decree state, that state is only one that can determine whether jurisdiction continues). The Texas court=s determination that Schmidt and the children have resided in Texas for more than six consecutive months before the commencement of the modification suit filed in Texas is of no significance. The California court retains exclusive continuing jurisdiction and is the only state that can determine if it will continue to exercise that jurisdiction.

**14**

Absent the California court=s relinquishment of that exclusive continuing jurisdiction, the Texas court was without jurisdiction to modify the California orders. A court of this state may not modify a custody determination made by the California court unless (1) the California court determines it no longer has exclusive continuing jurisdiction or that a court of this state would be a more appropriate forum; or (2) a court of this state or the California court determines that the children and their parents no longer reside in California.[10] Tex. Fam. Code Ann. ' 152.203. Neither circumstance exists in this case. It is of no consequence that the Texas court determined that it was a more appropriate forum; the California court must make this determination before a court of this state may modify the California court=s child custody determinations.[11] We agree with Saavedra that the Texas court erred to the extent that it attempted to exercise subject matter jurisdiction and modify the custody rights of these parents.

---

[10] The modifying court must also have jurisdiction to make an initial custody determination under section 152.201(a)(1) (home state jurisdiction) or 152.201(a)(2) (significant connections jurisdiction). Tex. Fam. Code Ann. ' 152.203.

[11] In its modified custody order dated July 25, 2000, the California court specifically states that it Ahas and maintains pursuant to the UCCJEA . . . exclusive home-state jurisdiction over all issues relating to the custody of the minor children of this marriage.@

15

Having found that the Texas court did not have jurisdiction to modify the California custody orders, we need not address Saavedra=s complaint that the Texas court should have declined to exercise its jurisdiction under the Aclean hands@ section of the family code.[12]  *See id.* ' 152.208.

**The Hague Convention**

Saavedra also complains that the trial court erred by exercising subject-matter jurisdiction under the Hague Convention because this case does not involve international child abduction.  In choosing to apply the Convention, the court relied on a prior California court order in which Schmidt and Saavedra agreed to be bound by the Convention.[13]  The court cited the Convention as a basis for refusing to enforce the California court=s child custody determination:

---

[12]  We note that section 152.208 is not intended to restrict a court=s exercise of temporary emergency jurisdiction.  Tex. Fam. Code Ann. ' 152.208 (AExcept as otherwise provided in Section 152.204 [the temporary emergency jurisdiction statute] or other law of this state, . . . .@).  Thus, we do not address the effect of Schmidt=s conduct on the court=s exercise of temporary emergency jurisdiction.

[13]  The parties presumably entered into this agreement because Saavedra is a citizen of Chile.  If the controversy here were international in nature, there is no dispute that the parties would be bound by the Convention with or without their agreement, as Chile is a signatory to the Convention.

The Court finds that the children have now settled into their environment in the home of Respondent DEBRA K. SCHMIDT. *See* Article 12, Hague Convention. The Court finds that a grave risk that return of the children the subject of this suit to MANUEL SAAVEDRA would expose the children to physical or psychological harm or otherwise place the children in an intolerable situation. *See* Article 13(a), Hague Convention.

The Hague Convention was established in 1980 to provide a remedy for international child abductions. Hague Convention, Preamble; International Child Abduction Remedies Act, 42 U.S.C.A. ' 11601(a)(4) (West 1995). It provides an international complement to the UCCJEA and the federal Parental Kidnaping Prevention Act (the PKPA), 28 U.S.C.A. ' 1738A (West 1994 & Supp. 2002). *See* 42 U.S.C.A. ' 11603(h) (West 1995). The remedies available under the Convention may be invoked when the moving party establishes by a preponderance of the evidence that (1) he or she had lawful custody rights to the child when the child was wrongfully removed; (2) the child was wrongfully removed or retained from his or her habitual residence; and (3) at the time of removal, those custody rights were actually exercised. 42 U.S.C.A. ' 11603(e)(1); *In re Prevot*, 59 F.3d 556, 560 (6th Cir. 1995). Even if these requirements have been satisfied, a court=s duty to order return of a wrongfully removed child is not absolute, and the two provisions cited by the Texas court set forth grounds upon which return may be denied. In other words, a court may decline to return the child if (1) return proceedings are commenced a year or more after the wrongful removal and the child is settled in his or her new environment, Hague Convention, Article 12, or (2) there is a grave risk that return would expose the child to physical harm or place the child in an intolerable situation, Hague Convention, Article 13(b). *See also* 42 U.S.C.A. '

**17**

11603(e)(2); Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,510 (March 26, 1986).

Here, the Texas court appears to have relied on *exceptions* to mandatory return of the children under the Convention even though neither party invoked the remedies available under the Convention. The Convention is intended to deter abductions by promoting enforcement of facially valid orders subject only to one of the exceptions; wrongful removal of a child will not gain the abductor a new forum in which to resolve the custody dispute. 42 U.S.C.A. ' 11601(b)(4) (Convention does not empower courts to determine merits of custody claims); *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir. 1993). More importantly, however, the dispute between Schmidt and Saavedra is an interstate dispute; the Convention only applies to child abduction cases that are international in nature.[14] *See* 42 U.S.C.A. ' 11601(b)(3)(A). Thus, despite the parties=agreement to be bound by the Convention, the Convention does not govern this jurisdictional dispute between Texas and California. Furthermore, the Convention is intended to complement not supplant the goals of the UCCJEA and the PKPA. By granting a new forum to a parent who wrongfully removed the children from California, the Texas trial court contravened the basic principle of the Convention, as well as the UCCJEA and the PKPA. We therefore conclude that the trial

---

[14] The Convention uses the term AContracting State,@ but because of the international scope of the Convention, the term state refers to country. *See* Brigitte Bodenheimer, The Hague Draft Convention on International Child Abduction, 14 Fam. L. Q. 99, 100 n.9 (1980/81).

court could not rely on the Convention as a basis for assuming jurisdiction to modify rather than enforce the California court=s child custody determination.

## Enforcement of Child Custody Determination Under Section 152.306

Saavedra also argues that the trial court erred in refusing to enforce the California court=s custody determination, as enforcement was required under section 152.306 of the family code. *See* Tex. Fam. Code Ann. ' 152.306. Sections 152.303 and 152.306(b) instruct courts of this state to recognize and enforce a child custody determination of a court of another state. Tex. Fam. Code Ann. ' 152.303, .306(b); *see also* UCCJEA ' 303 cmt., 9 U.L.A. 690-91 (courts have duty to enforce and not modify custody determinations made by other states in substantial conformity with UCCJEA); PKPA, 28 U.S.C.A. ' 1738A(a) (same). Under section 152.310, upon finding that a petitioner is entitled to immediate physical custody of the child, the court must award that party custody without relitigating the custody rights. Tex. Fam. Code Ann. ' 152.310. If the custody determination has been registered, there is only one defense to its enforcement: that the order has been vacated, stayed, or modified by a court with jurisdiction to do so. *Id.* ' 152.310(a)(2); *see also* UCCJEA, 9 U.L.A. 653 (Prefatory Note) (enforcing court=s inquiry is limited because neither UCCJEA nor PKPA allows enforcing court to modify custody determination). Unless Schmidt could establish that the California order had been stayed or vacated, the Texas court was required to enforce it. And to the extent that the Texas court order can be construed as a final order refusing to enforce California=s child custody determination, this Court would be required to reverse that order.[15]

---

[15] A final order in an enforcement proceeding may be appealed. Tex. Fam. Code Ann. ' 152.314.

**19**

**Temporary Emergency Jurisdiction**

Section 152.310, however, also provides an alternative to rendering a final order on a petition to enforce when circumstances warrant the assumption of temporary emergency jurisdiction. Tex. Fam. Code Ann. ' 152.310; *see also* UCCJEA ' 303 cmt., 9 U.L.A. 690 (AIf the child would be endangered by the enforcement of a custody or visitation order, there may be a basis for the assumption of emergency jurisdiction . . . .@). In the order announcing its refusal to enforce the California order, the Texas trial court included at least two bases for its assumption of jurisdiction: home-state jurisdiction, which we have held was error, and temporary emergency jurisdiction. If the court issued an order pursuant to its temporary emergency jurisdiction, the court may not have erred by refusing to enforce the California court=s order.[16] *See* UCCJEA ' 303 cmt., 9 U.L.A. 690 (upon finding of emergency, court issues temporary order directing parties to proceed either in court exercising continuing jurisdiction or court with jurisdiction to modify).

Under section 152.204, a court of this state may assume temporary jurisdiction over a custody dispute if the child is present in this state and it is necessary to protect a child subjected to or threatened with mistreatment or abuse. Tex. Fam. Code Ann. ' 152.204. A trial court enjoys broad

---

[16] If the orders were indeed temporary orders, as opposed to a final order denying Saavedra=s petition to enforce a child custody determination, those orders are not subject to appeal. Tex. Fam. Code Ann. ' 105.001(e).

discretion in issuing orders for immediate protection of a child. *Garza v. Harney*, 726 S.W.2d 198, 202 (Tex. App.CAmarillo 1987, orig. proceeding). States have a *parens patriae* duty to children within their borders, and the possibility that allegations of immediate harm might be true is sufficient for a court to assume temporary emergency jurisdiction in the best interests of the child under the UCCJEA. *In re Nada R.*, 108 Cal. Rptr. 2d 493, 500 (Ct. App. 2001); *In re Joseph D.*, 23 Cal. Rptr. 2d 574, 580 (Ct. App. 1993) (quoting *Hache v. Riley*, 451 A.2d 971, 975 (N.J. Super. Ct. 1982)). The duty of states to recognize and enforce a custody determination of another state must yield if circumstances require temporary emergency orders to protect the child. UCCJEA ' 204 cmt., 9 U.L.A. 677 (duties of states to recognize, enforce and not modify custody determinations of other states do not take precedence over need to protect child). Any order issued under emergency circumstances must be temporary in nature; the order must specify a period that the court considers adequate to obtain an order from the state with jurisdiction. Tex. Fam. Code Ann. ' 152.204(c); *Garza*, 726 S.W.2d at 203 (holding court exercising temporary emergency jurisdiction was empowered to act, but only on short term, temporary, emergency basis). The temporary order shall remain in effect only until proper steps are taken in the original forum state to adequately protect the children or until the specified period expires. Tex. Fam. Code Ann. ' 152.204(c); *Garza*, 726 S.W.2d at 203.

Once a court assumes temporary emergency jurisdiction, it has a duty to communicate with the other state that has asserted custody jurisdiction and to retain a record of those communications. Tex. Fam. Code Ann. '' 152.110(f), .204(d). This mandatory duty of cooperation between the courts of different states is the hallmark of the UCCJEA; it is this cooperation that is intended to lead to an informed

decision on custody.  *Joseph D.*, 23 Cal. Rptr. 2d at 583 (quoting *Fry v. Ball*, 544 P.2d 402, 407 (Colo. 1975); *Guardianship of Donaldson*, 223 Cal. Rptr. 707, 714 (Ct. App. 1986)).  One of the reasons for consulting with the other state=s court is to determine the duration of the temporary order.  Tex. Fam. Code Ann. ' 152.204(d); *In re C.T.*, 121 Cal. Rptr. 2d 897, 906 (Ct. App. 2002); *see also* Patricia M. Hoff, *The ABC=s of the UCCJEA: Interstate Child-Custody Practice Under the New Act*, 32 Fam. L.Q. 267, 284 (1998).  The court exercising exclusive continuing jurisdiction has the reciprocal duty to communicate with the court exercising emergency jurisdiction.  Tex. Fam. Code Ann. ' 152.204(d); *see also* Hoff, *supra*, at 284.

Temporary emergency jurisdiction is reserved for extraordinary circumstances.  UCCJEA ' 204 cmt., 9 U.L.A. 677.  A review of this record reveals that the Texas trial court believed it was faced with such extraordinary circumstances when it issued the orders on appeal here.  At the July 5, 2000 hearing,[17] Judge Meurer commented on her attempts to communicate with the California court:

> In speaking with Commissioner Appel, it is apparent that the courts and the judges are extremely upset with Ms. Schmidt.  It is also a great concern that perhaps in their anger with Ms. Schmidt for her failure to comply with court orders, they have failed also to address the best interest of the children, who are the subject of this lawsuit.

> I have requested from Commissioner Appel that she have CPS in California work with us to arrange visitation, and was told no.  The fact that the Department there has made a home study that=s totally inadequate . . . I find ludicrous.

---

[17]  The reporter=s record filed with this Court does not include any prior hearings or proceedings. The July 5 hearing is the earliest hearing included in the reporter=s record.

The court further noted that before he was awarded sole custody, Saavedra had only enjoyed supervised visitation with the children:

> The record should reflect that the latest order that came down from California sets forth that up until and through 1997, [Saavedra] has always been limited to supervised visitation.
>
> It should further be noted that when he was given sole custody, the Court then found that the children cannot be placed in the father=s home, and he is to have supervised custody with the children. And now California has simply dropped that, and given custody with the finding that this Court cannot accept, and that is; that there=s a, Aminimal@ risk of re-offending so long as he maintains sobriety. I don=t believe that I am willing to take any risks with that statement.

Further expressing her frustration with the California court=s refusal to communicate with her, Judge Meurer commented:

> I have asked California to assist me. Their intent is to not make any reasonable orders for transition. I have asked to place these children in California CPS with the Court supervising the visits and making the transition. That request was denied.
>
> . . . .
>
> I understand that there are orders there. I understand that the [UCCJEA] can=t contemplate that Courts will [not] communicate. I have never received a call from any judge in California. I have been promised calls back, and they have never returned my calls. They have never answered my questions. The only thing I got back was an order affirming everything again.

During the August 14 hearing, Saavedra brought to the trial court=s attention a modified California order decreeing that upon their return to California, the children shall be placed with Child Protective Services. The Texas court responded:

> Mr. Lusk [Saavedra=s counsel], I saw the home studies by Child Protective Services. I find it was woefully inadequate. I have found and made findings that the Court in California has continuously refused to communicate with this Court, which is well shown again by the fact that I=ve never seen this [1999 modified order], excepting that I was provided a copy of this order by the District Attorney=s office.
>
> . . . .
>
> It would appear to me that if anything, these orders are simply a manipulation of the system. They do not address best interest. There=s no indication that they address best interest. And there=s no indication from anyone that that has been addressed. And this Court will continue to take that responsibility until it is fully addressed.

At the June 25, 2001 hearing on Saavedra=s motion to enforce, the trial court heard disturbing evidence from a Texas CPS social worker, Anna Warde, indicating that the Alameda County CPS had been uncooperative and had not performed an adequate home study. During cross-examination, Warde confirmed that Alameda County CPS had approved the children=s placement with Saavedra:

> Q. With respect to the home study that was done in California.
>
> A. Uh-huh.
>
> Q. That home study approved Mr. Saavedra=s home as a placement for the children, didn=t it?
>
> A. It did. And it only used Mr. Saavedra=s information and didn=t try and get any information from other parties.

**24**

Q. Well, it - - it used all of the information that you provided to them, didn=t it?

A. I did not provide anything to them. I was not contacted by those people.

. . . .

Q. There was no background information provided to them for - - to even tell them what the purpose of the home study was.

A. No.

Q. They just got a request to do a home study on Manuel Saavedra and his address, and that was it?

A. And that=s it. And they contacted him and him only.

Questioning by Schmidt elicited more frustration from Warde regarding her dealings with the

Alameda County CPS:

Q. . . . Did the California CPS office cooperate with your agency in arranging visitation for Mr. Saavedra and the children?

A. No. I haven=t been able to have any contact with - - I don=t know what=s going on in California CPS but they do not return phone calls.

Q. But you did make an attempt?

A. I made several attempts.

Warde testified that the California CPS had set up no transition plan for the children.

It is apparent from the record that the Texas court perceived an emergency situation warranting its exercise of temporary emergency jurisdiction when it discovered that the California court had awarded Saavedra sole legal custody of the children, had implemented no transition plan, and had

**25**

disallowed any contact between Schmidt and the children. Saavedra, who had been convicted of molesting a younger female family member, had never enjoyed unsupervised visitation with his young daughters in California or in Texas. The same California court that awarded Saavedra sole legal custody of the children had previously required that Saavedra=s access to them be supervised. And yet, seemingly determined to punish Schmidt without regard for the children=s best interests, the California court decided that Saavedra was suddenly qualified to have sole custody of the children. Schmidt, on the other hand, was prohibited from having any contact with the children because she had violated prior court orders. The Texas court was rightfully alarmed that sole custody of two young girls was awarded to a registered sex offender, while their mother was not allowed to maintain any contact with them. *See* Brigitte M. Bodenheimer, *Progress Under the Uniform Child Custody Jurisdiction Act & Remaining Problems: Punitive Decrees, Joint Custody, & Excessive Modifications*, 14 Cal. L. Rev. 978, 1004, 1007 (1977) (punitive decrees do not command respect that is due other out-of-state custody decrees and should not be recognized under UCCJA); Brigitte M. Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand. L. Rev. 1207, 1240 (1969) (expressing doubt that Athere is ever justification for punitive custody changes which disrupt a child=s life merely to uphold the authority of a court, especially since the disciplinary measure usually leads to further defiance of the court and lack of respect for the punitive measures by other courts@). It expressed alarm at the totally inadequate study of Saavedra=s home and a modified order that appeared to superficially address the Texas court=s concerns. The Texas court noted that it had been unable to secure any assurance that the California

court would implement a transition plan to assist the children with this drastic upheaval in their daily living arrangements.

Faced with these circumstances and the failure of the California court to address the best interests of the children in any of its orders, the Texas court assumed temporary emergency jurisdiction in July 2000 and *again* relied on its emergency jurisdiction in announcing its September 2001 orders. Although the UCCJEA does not allow reevaluation of another state=s best interest determination, *see* UCCJEA, 9 U.L.A. 652 (Prefatory Note), section 152.204 is specifically designed to ensure protection of a child. *See id.* ' 204 cmt., 9 U.L.A. 677.

After the Texas court first assumed temporary emergency jurisdiction in July 2000, its concerns were compounded when the California court refused to communicate about plans for these two girls. Our review of the record underscores the total lack of communication by the California court. The UCCJEA was premised on the assumption that sister state courts will communicate with one another; indeed, communication is mandatory under the Act once a court assumes temporary emergency jurisdiction. *See* Tex. Fam. Code Ann. ' 152.204(d); *Joseph D.*, 23 Cal. Rptr. 2d at 583. Cooperation between courts is required to resolve circumstances that threaten the safety of children, and communication is necessary to limit the duration of the temporary orders. *See* Tex. Fam. Code Ann. ' 152.204(d). These goals cannot be attained without effective communication between the state courts.

The California court=s modification of its order placing the children with the Alameda County CPS is no substitute for the kind of communication and cooperation between the courts that would ensure the effective protection of these children. According to Warde, the Alameda County CPS

27

determined that Saavedra=s home was approved as a placement for the children, based on a Awoefully inadequate@ home study. And although the California court modified its order, it had previously determined that granting Saavedra sole legal custody was appropriate, in spite of his prior molestation conviction and the fact that he had never enjoyed unsupervised visitation with the children. Furthermore, no transition plan had been implemented to ensure a healthy transition for the children. The California court consistently demonstrated its desire to punish Schmidt for her failure to comply with its orders, rather than addressing the best interests of the children in any of its orders. The Texas court was justified in questioning the motivations behind the California court=s decision to modify its orders. It expressed concern that the children not simply go in the front door of the Alameda County CPS and out the back door to Saavedra. The California court=s actions are inexplicable; the Texas trial court aptly observed, AIn my years on the Bench, I have not experienced a situation where I have not had a Court respond to my requests, or attempt to cooperate with an agency for the best interest of the children . . . .@ Likewise, this Court has never seen the goals of the UCCJEA thwarted in such a blatant manner. The only defense to enforcement of the California order was for the Texas court to extend its temporary emergency jurisdiction. The court had received no assurance that the emergency situation had been resolved or even that it would soon be resolved by the California court.

We are not alone in remarking on the California court=s inexplicable failure to communicate after the Texas trial court assumed temporary emergency jurisdiction to protect these children. When Schmidt was found guilty of contempt and jailed (for removing the children in violation of the initial custody order and for not returning them as subsequently ordered), the California Court of Appeal for the third

appellate district granted two petitions for writ of habeas corpus, recounting in detail the California trial court=s Aindefensible refusal to communicate with the Texas court.@ *In re Schmidt*, Nos. C040583, C040942, C040966, slip op. at 26, 2002 Cal. App. Unpub. LEXIS 7016, at *31 (Ct. App. July 29, 2002). Moreover, the California appellate court opined that the record Ashows the Texas court=s assumption of emergency jurisdiction was not the act of a renegade court oblivious to the UCCJEA,@ and that Athe dilemma faced by the Texas court in deciding, albeit reluctantly, to assume emergency jurisdiction over the children was real and simply cannot be downplayed.@ *Id.*, slip op. at 25, 34, 2002 Cal. App. Unpub. LEXIS 7016, at *30-32.

We reiterate that the trial court=s assumption of temporary emergency jurisdiction does not include jurisdiction to modify the California court=s child custody determination. *See Abderholden v. Morizot*, 856 S.W.2d 829, 834 (Tex. App.CAustin 1993, no writ) (holding that exercise of emergency jurisdiction does not confer authority to make permanent custody disposition or modify custody decree of court with jurisdiction); *Garza*, 726 S.W.2d at 203 (same) (quoting *Hache*, 451 A.2d at 975). A court=s exercise of temporary emergency jurisdiction is temporary in nature and may not be used as a vehicle to attain modification jurisdiction for an ongoing, indefinite period of time. The Texas court failed to include a definite duration for its temporary emergency orders. The temporary orders must remain in effect for only as long as necessary to ensure that the emergency situation will be resolved and the safety of the children will be protected. *See* Tex. Fam. Code Ann. ' 152.204; *Garza*, 726 S.W.2d at 203. The duration of the temporary orders is generally an issue to be determined when the courts of two sister states communicate

with one another. This Court, however, is without jurisdiction to consider any omissions in the temporary orders.

Despite the prior history of this case, the California court can protect its exclusive continuing jurisdiction over this custody dispute by cooperating to resolve the emergency situation and by ensuring the Texas court that it will address the safety of these children, as envisioned by the UCCJEA. The Texas court may enter temporary orders maintaining custody in Schmidt for a period of time no longer than reasonably necessary to allow the California court to consider the evidence that was before the Texas court[18] and to develop a realistic transition plan appropriate to all the circumstances that will provide the children with access to both parents, who seem to need guidance in resolving their dispute over custody rights. *See, e.g.*, *Joseph D.*, 23 Cal. Rptr. 2d at 584 (authorizing trial court=s rendition of temporary orders not strictly within parameters of UCCJEA under its equity powers). The California court may issue a similar order in accordance with the cooperative spirit of the UCCJEA, ensuring that the two girls will not be returned to Saavedra until a thorough home study has been conducted and an appropriate transition plan implemented,

---

[18] The Texas court heard evidence indicating that Schmidt and Saavedra had been able to work out visitation between them in a Avery civil manner.@ Both parties were complying with the Texas court=s orders. The court also heard evidence that the two girls have a positive established relationship with their mother and have settled into their environment in their mother=s home; the girls are continuing to adjust to visitation with their father. Warde testified that in her opinion, the girls would face tremendous emotional distress if returned to their father at this time and their placement with the Alameda County CPS could be extremely traumatic. The California court did not have this information when it rendered its final divorce decree. *See* Brigitte Bodenheimer, *Uniform Child Custody Jurisdiction Act*, 3 Fam. L. Q. 304, 312 (1969) (observing that various provisions in UCCJA facilitating collection of information from sister states assures that custody decision that is to be enforced has been reached under conditions making it worthy of respect and deference by other states).

including access to both parents. Such an order would assure the Texas court that both courts will work to resolve the emergency situation and allow the Texas court to confidently return the girls to California. By so communicating, the California court and the Texas court should agree on a time period when these plans will be in place to ensure the protection of the children. Then, the Texas court must relinquish its temporary emergency jurisdiction.

## CONCLUSION

We hold that the Texas court was without jurisdiction to modify the California court=s custody determination. The Texas court, however, relied on temporary emergency jurisdiction to enter its orders. The record reflects that the California court refused to communicate with the Texas court concerning realistic plans to protect the safety of these children. The UCCJEA recognizes emergency concerns over a child=s safety as a defense to enforcement of another state=s custody orders, but only until the emergency can be resolved. Because we construe the Texas court=s orders as temporary orders rendered pursuant to its exercise of temporary emergency jurisdiction, we dismiss this appeal for want of jurisdiction.[19] The cause remains pending in the trial court.

---

[19] Because we construe the Texas court=s orders as temporary orders and dismiss this appeal for want of jurisdiction, we need not address Saavedra=s complaint that he had not been served with citation on the ad litem=s motion to modify nor his complaint that the trial court erred in denying his request for fees, costs, and expenses under sections 152.310 and 152.312 of the family code. *See* Tex. R. App. P. 47.1.

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Dismissed for Want of Jurisdiction

Filed:   October 31, 2002

Publish