# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00559-CV

**James Ernest Magera, Appellant**

**v.**

**Melanie Dawn Buckley, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-l-FM-13-000930, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant James Ernest Magera appeals from the district court's order, signed August 4, 2015, denying his "Motion for Paternity, Jurisdiction, and Modification of Temporary Orders" and declining to exercise jurisdiction over the underlying custody dispute. We affirm the district court's order.

### Factual and Procedural Background

Magera and Buckley were in a relationship for a number of years and had a son, R.J.M., born in 2006. They lived together in Austin until August 2012, when Buckley moved to Utah with R.J.M. and S.R.V., her son from a previous marriage. Magera followed in September 2012 in hopes of reuniting the family, but the couple did not reconcile. In February 2013, while he still lived in Utah, Magera filed a suit affecting the parent-child relationship (SAPCR) petition in the Travis County District Courts, seeking custody of R.J.M. and asking the Texas courts to exercise

jurisdiction over the matter, explaining that he wished to return to Texas with R.J.M. so that he could find work and re-establish Texas residency. In mid-March 2013, Buckley filed for custody in Utah.

In mid-April 2013, a Utah Court Commissioner[1] held a hearing in Buckley's custody proceeding. Following the hearing, the commissioner signed a "Minute Entry" stating that he had conferred with a Travis County Associate Judge regarding the dueling proceedings and that he and the associate judge agreed that "neither Utah nor Texas has presumptive jurisdiction as the home state, and either Court could exercise jurisdiction going forward." They concluded that "it would be appropriate to allow the parties an opportunity for a hearing in the Texas action prior to a final determination as to which Court would exercise jurisdiction but that, pending such Order and future conference between [the associate judge] and the Commissioner, it would be appropriate . . . that Utah continue to exercise jurisdiction." The commissioner and the associate judge agreed that "dismissal of either action at this point would be premature," and the commissioner decided that Utah could exercise jurisdiction over Buckley's custody suit.

Magera moved back to Texas in May 2013. In mid-June 2013, the Utah commissioner held a hearing on temporary orders in Buckley's suit and gave her primary custody of R.J.M., granting Magera visitation rights.[2] In August 2013, while R.J.M. was in Texas for visitation

---

[1] In Utah, some district courts appoint commissioners to handle domestic issues, giving the commissioners the authority to make recommendations to the district court, issue temporary orders, conduct settlement and pretrial conferences, and certify to the district court matters that require a hearing before a district court judge. Utah R. Jud. Admin. 6-401(2), (3). Commissioners do not make final adjudications. *Id.* R. 6-401(4)(A).

[2] The clerk's record does not include any June 2013 temporary orders from Utah, so we take this fact, which Buckley does not dispute, from Magera's pleadings and from Magera's testimony that a Utah trial on temporary orders was held sometime between April and August 2013.

with Magera, Buckley filed a Registry of Foreign Judgment in Travis County, attaching an "Order on Ex Parte Motion for Writ of Assistance," in which a Utah district court judge ordered law enforcement to remove R.J.M. from Magera's custody and give custody back to Buckley. Magera filed a motion in Travis County contesting the Utah order, asserting that the facts were insufficient to show that R.J.M. was in danger and that he did not get proper notice of the Utah proceedings. *See* Tex. Fam. Code § 152.305 (setting out procedure for registering another state's custody determination and for contesting validity of registered order). The SAPCR and Registry proceedings were consolidated into this single proceeding in January 2014.[3]

On February 6, 2014, the Travis County Associate Judge held a hearing to consider the "hierarchy of jurisdiction" set out in the Uniform Child Custody Jurisdiction and Enforcement Act. *See id.* § 152.201 ("Initial Child Custody Jurisdiction"); *see generally id.* §§ 152.001-.317. The associate judge first found that "neither Texas nor Utah can assert home state jurisdiction," noting that Texas was not R.J.M.'s home state when the SAPCR was commenced and that at the time the suit was filed, Magera also lived in Utah and not Texas. The associate judge then looked to the parties' substantial connections to Utah and Texas, *see id.* § 152.201(a)(2)(A), and determined that R.J.M. had significant connections to both states. He concluded that Utah was "the more appropriate forum" because (1) R.J.M. had lived there since August 2012, (2) current information about his well-being "exists in Utah" while "[p]ast evidence exists in Texas," and (3) the Utah court had "conducted hearings already and is familiar with the facts of the case and can hear the case

---

[3] Magera's SAPCR was assigned district court cause number D-1-FM-13-000930. Buckley's Registry of Foreign Judgment was assigned cause number D-1-FM-13-004374. The two proceedings were consolidated into D-1-FM-13-000930.

within an expeditious fashion." The associate judge found that the issues should be resolved in Utah and that the Texas courts should decline jurisdiction and defer to Utah. On March 27, 2014, the district court held a hearing on Magera's request for a de novo hearing and signed an order affirming the associate judge's order. Magera did not appeal from that order.

In June 2014, Buckley and the children came back to Texas, and in July 2014, the Utah commissioner ordered Buckley and Magera to mediation in Texas, resulting in an agreement addressing R.J.M.'s conservatorship, which was filed in the Utah courts. In the agreement, Buckley agreed to stay in Texas for at least one year from August 7, 2014, but in late February 2015, she informed Magera that she and the children were moving back to Utah. Magera sought a restraining order in Utah, and the Utah commissioner ruled in March 2015 that the mediation agreement was binding and that R.J.M. should live in Austin with Magera if Buckley did not return to Texas with him. However, about a week later, a Utah district judge overturned the commissioner's ruling, ordering that R.J.M. should remain in Utah with Buckley until a bench trial could be held to address all of the parties' issues, including the enforceability of the mediation agreement.

In July 2015, Magera filed in Travis County a "Motion for Paternity, Jurisdiction, and Modification of Temporary Orders" and a motion to vacate the Utah district judge's order. The district court held a hearing on Magera's motions and signed an order denying the motions and finding (1) that "the case is set for final trial on the merits in Utah in August, 2015" and (2) that the Travis County District Courts did not have jurisdiction over the matter. It is from that order that Magera appeals.

4

**Discussion**

In March 2014, the district court in Travis County weighed the question of whether Utah or Texas would be the better forum for deciding issues related to R.J.M.'s conservatorship and decided that Texas courts should not exercise jurisdiction over this case under section 152.201 of the family code.[4] Magera did not appeal from that determination and instead continued to litigate the case in Utah for more than a year, when he filed here his "Motion for Paternity, Jurisdiction, and Modification of Temporary Orders."

---

[4] A Texas court has jurisdiction to make an initial child custody decision only if:

(1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:

> (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

> (B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or

(4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

Tex. Fam. Code § 152.201(a).

We review whether a trial court has subject matter jurisdiction de novo. *Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005). A Texas court may not modify another state's child custody determination unless the Texas court has jurisdiction under section 152.201(a) *and* (1) the other state has determined that it no longer has exclusive jurisdiction under section 152.202, (2) the other state has determined that Texas would be a more convenient forum under section 152.207, or (3) a court in Texas or the other state determines that the child, the parents, and any other person acting as a parent are not currently living in the other state. Tex. Fam. Code § 152.203; *Saavedra v. Schmidt*, 96 S.W.3d 533, 541 (Tex. App.—Austin 2002, no pet.) ("Absent the California court's relinquishment of [its] exclusive continuing jurisdiction, the Texas court was without jurisdiction to modify the California orders. A court of this state may not modify a custody determination made by the California court unless (1) the California court determines it no longer has exclusive continuing jurisdiction or that a court of this state would be a more appropriate forum; or (2) a court of this state or the California court determines that the children and their parents no longer reside in California."); *see also* Tex. Fam. Code §§ 152.201(a) (jurisdiction to make initial custody determination), .202 (exclusive continuing jurisdiction), .207 (inconvenient forum).

The commissioner and associate judge discussed the issue of which state should make initial child custody determinations and decided that Utah was the better forum. The district court revisited the issue of jurisdiction in March 2014 and declined to exercise jurisdiction, and Magera did not appeal from that decision. Utah's courts issued initial orders related to custody and continue to exercise jurisdiction. Indeed, the record shows that in the spring of 2015, the Utah district judge was contemplating that a trial on the merits would occur in the near future. Thus, none

of the requirements of section 152.203 are satisfied: Utah has not determined that it no longer has jurisdiction; Utah has not determined that Texas would be a more convenient forum; and neither Utah nor Texas has determined that R.J.M., Buckley, and Magera have all stopped residing in Utah. *See* Tex. Fam. Code § 152.203. Therefore, the district court properly determined that it lacked jurisdiction to modify Utah's orders and denied Magera's motion for it to exercise jurisdiction over the proceeding.

## Conclusion

Texas may not exercise jurisdiction over this matter while Utah has continuing exclusive jurisdiction, Utah has not decided that Texas would be a more convenient forum, and the child or either parent lives in Utah. *See id.* We affirm the district court's order declining to exercise jurisdiction over the cause.[5]

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed: July 22, 2016

---

[5] Magera titled his appellate filing as "Appellant's Brief, Request for Writ of Mandamus, and Request for New Trial." Most of the document reads as if it were a brief in a direct appeal, but Magera occasionally refers to standards and procedures applied in a mandamus proceeding. However, even if we were to view this cause as an original proceeding seeking mandamus relief, we would still reach the same result and would deny Magera's requested relief.