# NO. 12-09-00017-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE: KLAAS HARM JESSE KAMSTRA,* | § | |
| *RELATOR* | § | *ORIGINAL PROCEEDING* |
| | § | |

## *MEMORANDUM OPINION*

In this original mandamus proceeding, Klaas Harm Jesse Kamstra, relator, challenges certain portions of an order signed by the trial court on December 22, 2008 pursuant to the Texas Family Code and the Hague Convention.[1]  Jesse requests a writ of mandamus (1) vacating the directive in the order that he deposit $50,000 into a bank account for the benefit of Mava Lou Kamstra, the real party in interest, (2) vacating the attorney's fee award to Mava, (3) vacating the denial of Jesse's request for attorney's fees, (4) enjoining any attempt to enforce the vacated rulings, and (5) ordering that Jesse recover his proved reasonable and necessary attorney's fees and expenses or, alternatively, directing the trial court to afford Jesse such recovery.  We conditionally grant the petition in part and deny it in part.

## BACKGROUND

Jesse, a citizen of the Netherlands, and Mava, a citizen of the United States, were married on May 10, 1995.  They are the parents of a daughter born on March 18, 1997, and a son born on May 10, 1998.  At the time the children were born, Jesse and Mava lived in Tanzania, Africa.  However, Mava traveled to Holland for each birth.  Thus, the children are citizens of the Netherlands, and they are also citizens of the United States.  However, it was undisputed in the trial court that the children have lived their entire lives in Africa.

---

[1]  The respondent is the Honorable Robin D. Sage, Judge of the 307th Judicial District Court, Gregg County, Texas.

After living in Tanzania for approximately ten years, the family moved to Burundi, Africa, in either June or August 2007.  In August 2008, Mava and the children made their annual visit to Longview, Texas, to visit Mava's parents.  They were scheduled to return to Burundi on September 7, 2008.  Two or three days before their scheduled return date, Mava notified Jesse that, due to her father's ill health, she and the children would not return to Burundi at that time and that she intended to enroll the children in school in Longview.  She told Jesse that she would stay for another three months, or at least until Christmas, and then return to Burundi.  Subsequently, Jesse and Mava communicated, primarily by email, regarding the status of their relationship and arrangements for Jesse to communicate with and visit the children.

On October 17, 2008, Mava informed Jesse by email that she and the children would stay in Longview "indefinitely."  Approximately one week later, and without Jesse's knowledge, Mava filed a divorce and child custody action in Gregg County, Texas (the "Gregg County action").  In her original petition, she alleged that she had been domiciled in Texas for the preceding six months and a resident of Gregg County for the preceding ninety days.  On November 3, 2008, Jesse arrived in Longview "to try to see if [they] could mend the marriage" and "for the sole purpose of seeing [his] kids and hoping to arrange that they . . . would come back . . . before Christmas."  Soon after his arrival, Jesse was served with a copy of the original petition in the Gregg County action and a temporary restraining order.  Shortly thereafter, Jesse retained an attorney to represent him in the Gregg County action and later retained an attorney in Burundi to initiate divorce and child custody proceedings there.

Jesse filed a special appearance in the Gregg County action, asserting that the trial court did not have jurisdiction over him, and a plea to the jurisdiction urging that the trial court did not have jurisdiction of the child custody action.  He alleged further that Burundi was the children's "home state."  He also filed an original answer in which he alleged that Mava had engaged in parental and international kidnapping and asked that the trial court enter orders for the return of the children to their "home state" of Burundi.  In a later filed supplemental pleading, Jesse specifically sought relief under the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention") and the International Child Abduction

Remedies Act ("ICARA").[2] He alleged in that pleading that Burundi was the children's "habitual residence."

After an evidentiary hearing, the trial court entered temporary orders pertaining to the children. Approximately one month later, the trial court conducted another evidentiary hearing. By the date of the second hearing, Jesse's Burundi attorney had filed a divorce and child custody action, and the Burundi court had set a hearing for January 26, 2009. The custody of the children and visitation were among the issues to be addressed at the hearing.

At the second evidentiary hearing, Jesse maintained that the Hague Convention applied to the case. Specifically, his counsel argued as follows:

> We've determined that the law of Holland will apply in Burundi, and the law of Holland includes that they are a signatory to The Hague Convention which would invoke The Hague Convention into this matter. And that unless this Court finds that the return of the children would violate the fundamental principles of the United States regarding protection of human rights and fundamental freedoms, the Court should return the children to Burundi for determination there under The Hague Convention.

Burundi is not a signatory to the Hague Convention, and therefore Mava's counsel disagreed with this argument initially. Ultimately, however, he stipulated that the Hague Convention applied. At the conclusion of the hearing, the trial court ruled from the bench and signed a written order on December 22, 2008 memorializing its ruling. The order includes certain emergency orders (collectively the "emergency orders") "under Texas Family Code 152.204 (Temporary Emergency Jurisdiction) and the Hague Convention since the children have been abducted to this state[.] . . ." These emergency orders direct, in part, that Jesse deposit $50,000 in a "neutral bank in the area" for Mava to withdraw by order of the trial court "for the purpose of attorney's fees in Burundi, for travel, for visits, or for court or anything else she needs to prosecute–to reasonably prosecute or defend herself in the divorce or the custody action in Burundi." The emergency orders

---

[2] Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg. 10494 (March 26, 1986); International Child Abduction Remedies Act, 42 U.S.C.A. §§ 11601–11611 (West 2005).

also direct Jesse to pay $15,000 toward Mava's attorney's fees. However, Mava is not ordered to pay any portion of Jesse's attorney's fees.[3]

At Jesse's request, the trial court filed findings of fact and conclusions of law. After depositing $50,000 in compliance with the trial court's order, Jesse filed this original proceeding challenging the emergency orders. On Jesse's motion, we stayed the trial court's disbursement of funds to Mava until our decision on the merits in this proceeding. After oral argument and additional review, we ordered further briefing on the following issues pertaining to the trial court's jurisdiction:

1. What authority supports a conclusion that the Hague Convention is applicable here?

2. What authority supports a conclusion that counsels' agreement, admission, or stipulation regarding the applicability of the Hague Commission was binding on the trial court and is binding on this Court?

3. If the Hague Convention is not applicable here, how should this Court proceed?

## PREREQUISITES TO MANDAMUS

A writ of mandamus will issue to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *Walker*, 827 S.W.2d at 839-40. Under this standard, the trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

With respect to factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Id.* at 839.

---

[3] On the same day, the trial court signed an order dismissing the divorce action. Specifically, the trial court found that it lacked jurisdiction of the divorce action because Mava had not been a domiciliary of the State of Texas for the preceding six months or a resident of Gregg County for the preceding ninety days. The order included an additional recitation that the trial court declined the divorce action because Gregg County was not a convenient forum, that all matters can be tried in Burundi, "and for 'judicial economy.'" Jesse does not challenge any portion of this order.

4

Therefore, the relator must establish that the trial court could reasonably have reached only one decision. *Id*. at 840.

An appellate remedy is "adequate" when any benefits to mandamus review are outweighed by the detriments. *In re Prudential*, 148 S.W.3d at 136. However, mandamus is proper, without a showing of the inadequacy of appeal, if a trial court issues a void order. *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding). An order that the court had no power or jurisdiction to enter is void. *Urbish v. 127th Judicial Dist. Court*, 708 S.W.2d 429, 431 (Tex. 1986) (orig. proceeding).

When there are questions of fact, or mixed questions of law and fact, such as the determination of a child's habitual residence, upon which the right to assume jurisdiction depends and upon which it is the duty of the trial court to pass judicially, then there is jurisdiction to decide those questions. *Qwest Microwave, Inc. v. Bedard*, 756 S.W.2d 426, 433 (Tex. App.–Dallas 1988, no writ), *disapproved on other grounds by Palmer v. Coble Wall Trust Co.*, 851 S.W.2d 178, 182 (Tex. 1992). If that discretion is erroneously exercised, it can be corrected only by appeal or error, and not by mandamus. *Id*. A different situation is presented where the want of jurisdiction appears affirmatively on the face of the record or is otherwise clear as a matter of law. *Id*. In such a case, mandamus will issue to remedy an unauthorized assumption of jurisdiction. *Id*.

### JURISDICTIONAL ISSUES

As mentioned previously, we requested postsubmission briefing on issues relating to the trial court's jurisdiction in this case. In response, the parties readily acknowledged that their stipulation regarding the applicability of the Hague Convention could not confer subject matter jurisdiction where none existed. Jesse contends, however, that the trial court had jurisdiction under the Hague Convention or, alternatively, under section 152.204 of the Texas Family Code. According to the recitations in its order, the trial court relied on both as jurisdictional grounds for issuing the emergency orders.

Jesse argues further that because the trial court properly assumed jurisdiction under either the Hague Convention or section 152.204, he can recover his attorney's fees and other expenses from Mava. *See* 42 U.S.C.A. § 11607(b) (petitioner's expenses recoverable from respondent in Hague Convention case where child returned unless

5

respondent establishes that such order would be "clearly inappropriate"); TEX. FAM. CODE ANN. § 152.312(a) (Vernon 2008) (prevailing party's expenses recoverable from nonprevailing party under the UCCJEA[4] unless the party from whom fees are sought establishes that such award would be "clearly inappropriate"). He also maintains that no authority exists to support the trial court's awards to Mava. More particularly, Jesse contends that the trial court exceeded its jurisdiction when it issued the emergency orders. Although Mava disagrees with Jesse's challenges to the substance of the emergency orders, she adopts Jesse's arguments regarding the grounds for the trial court's jurisdiction.

Despite the additional briefing provided by the parties, our concerns about the trial court's jurisdiction remain. Accordingly, we first address the trial court's jurisdiction.

## THE HAGUE CONVENTION

In 1980, the Hague Conference on Private International Law drafted the Hague Convention on Child Abduction "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." *See* Hague Convention, Preamble, 51 Fed. Reg. 10494 (March 1986). Other purposes of the Convention include "[restoring] the pre-abduction status quo and [deterring] parents from crossing borders in search of a more sympathetic court." ***Robert v. Tesson***, 507 F.3d 981, 988 (6th Cir. 2007).

The United States Senate ratified the Hague Convention on April 29, 1988, and became a "Contracting State" on July 1, 1988.[5] *See* Exec. Order No. 12,648, 53 Fed.

---

[4] The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") was designed, in large part, to clarify and to unify the standards for courts' continuing and modification jurisdiction in interstate child custody matters. ***In re Forlenza***, 140 S.W.3d 373, 374 (Tex. 2004) (orig. proceeding). Section 152.204 is part of the UCCJEA. *See* TEX. FAM. CODE ANN. § 152.001-.317 (Vernon 2008). The UCCJEA provides that "[a] court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying . . . Subchapter C[, which includes section 152.204]." *See* TEX. FAM. CODE ANN. § 152.105(a) (Vernon 2008).

[5] States ratify the Convention by adopting it in accordance with local law and depositing evidence of the ratification with the Ministry of Foreign Affairs in the Netherlands. Hague Convention, Ch. VI, Art. 37. Because the Hague Convention is an international treaty and was ratified by the Senate, it is the "supreme law of the land." U.S. CONST. Art. VI (Supremacy Clause).

6

Reg. 30637 (Aug. 11, 1988). That same year, the United States Congress implemented the Convention by enacting ICARA. *See* 42 U.S.C.A. §§ 11601-11611. This act gives concurrent jurisdiction to federal district courts and state courts to hear cases arising under the Convention. *See* 42 U.S.C.A. § 11603(a). It also establishes the procedure by which a parent can petition for the return of a child who has been wrongfully removed from the child's habitual residence to the United States. *See* 42 U.S.C.A. § 11603(b).

The Convention is based on the principle that the country of the child's habitual residence is best suited to determine questions of child custody and access. *In re J.G.*, 2009 WL 3838859, at *2 (Tex. App.–Dallas 2009, no pet.). Consequently, in a wrongful removal action, the court has the authority to determine the merits of a wrongful abduction claim, but not the merits of the underlying custody claim. *See England v. England*, 234 F.3d 268, 271 (5th Cir. 2000) ("[T]he [Hague] Convention prohibits courts considering Convention petitions from 'adjudicating the merits of [the] underlying custody dispute[s].'") (citations omitted)); *see also* Hague Convention, Ch. III, Art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.").

The Convention applies to any child under the age of sixteen years who was "habitually resident in a Contracting State immediately before any breach of custody or access rights."[6] *See* Hague Convention, Ch. I, Art. 4; *see also* 42 U.S.C.A. § 11603(e)(1)(A). When a child has been habitually resident in a nonsignatory country or is taken to a nonsignatory country, the Hague Convention does not apply. *See, e.g.*, *Taveras v. Taveras*, 397 F. Supp. 2d 908, 912 (E.D. Ohio 2005), *aff'd*, 477 F.3d 767 (6th Cir. 2007) (stating that when a child is taken from a nonsignatory country and retained in a signatory country, it is "well-settled" that there is no remedy because the terms of the Convention are applicable only to those countries who signed the Convention and thereby agreed to abide by its terms); *Mohsen v. Mohsen*, 715 F.Supp. 1063, 1065 (D. Wyo. 1989) (holding that petitioner seeking return of a child habitually resident in Bahrain, a

---

[6] The Hague Convention uses the term "Contracting State." Because of the international scope of the Convention, the term "state" refers to "country." *See Saavedra v. Schmidt*, 96 S.W.3d 533, 543 n.14 (Tex. App.–Austin 2002, no pet.).

nonsignatory country, is not entitled to seek redress under the Hague Convention). Nevertheless, Jesse argues that the Hague Convention applies in this case.

**Intent**

To support his position, Jesse first discusses several cases that address the factors to be considered when determining a child's habitual residence. He points out that he and his children "purposed to remain Dutch citizens, had a life to go back to in the Netherlands, and were in Burundi as missionaries." He recounts the educational opportunities for his children in Europe as a result of their Dutch citizenship and mentions that they were able to enter the United States without a visa because they were Dutch citizens. Finally, he urges that "[t]he fact that they resided in Burundi should not be a stumbling block to a finding that they remained under Dutch law and enjoyed the protections of Dutch law even while performing missionary work in Burundi."

We first note that the Hague Convention expressly provides that "[t]his Convention shall apply as between Contracting States. . . ." Hague Convention, Ch. V, Art. 35. Moreover, the Convention applies only to a child who is under sixteen years of age and who was "habitually resident in a Contracting State immediately before any breach of custody or access rights." Hague Convention, Ch. I, Art. 4. And the express language of the Convention does not include any requirement that the citizenship of a parent or a child be considered in determining the applicability of the Convention to a particular case. Therefore, under the plain, unambiguous language of the Convention, its administrative and judicial mechanisms apply only when the country to which the child is abducted and the country from which the child is taken are parties to the Convention. *United States v. Amer*, 110 F.3d 873, 881 (2nd Cir. 1997); *Taveras*, 397 F. Supp. 2d at 911-12; *Mezo v. Elmergawi*, 855 F. Supp. 59, 62 (E.D. N.Y. 1994).

Jesse reminds us, however, that "habitual residence" is not defined in the Convention. He further asserts that the Convention's drafters intended the term to be applied to the facts and circumstances of each case in a nontechnical manner. *See Friedrich v. Friedrich*, 983 F.2d 1396, 1401 (6th Cir. 1993). Consequently, he cautions us against taking a "rigid stance" when addressing a child's "habitual residence." He also refers us to the following statements relating to the relevance of parental intent in determining "habitual residence":

8

> It is quite possible to participate in all the activities of daily life while still retaining awareness that one has another life to go back to. In such instances one may be "acclimatized" in the sense of being well-adjusted in one's present environment, yet not regard that environment as one's habitual residence.

*See Mozes v. Mozes*, 239 F.3d 1067, 1079 (9th Cir. 2001). According to Jesse, these statements describe his situation.

We interpret Jesse's argument as a suggestion that his children's "habitual residence" is the Netherlands, not Burundi, because he and the children intend to return to the Netherlands in the future. However, he did not make this assertion in the trial court. Instead, he alleged in his supplemental pleading that Burundi was the children's "habitual residence." Further, he testified that the children had been in Africa all of their lives and had lived in Burundi for approximately one year before traveling to Longview in 2008. Jesse also discussed the children's future educational opportunities as a result of their Dutch citizenship, and referred to those opportunities as being available "at any university in Europe." Additionally, he mentioned their return trips to visit family in the Netherlands. However, there was no testimony relating to Jesse's intent, or the children's intent, to return to the Netherlands permanently. Accordingly, the trial court implicitly found that Burundi was the children's habitual residence. The record shows that the underlying facts were undisputed, and we conclude that the trial court correctly applied the law in determining that the children's habitual residence was Burundi. Therefore, Jesse's argument to the contrary is without merit.

## Citizenship

Jesse argues further that denying him the protections of the Hague Convention "ignores the plain language of Article 25 [of the Convention] and its proviso that it apply to nationals of contracting states, such as [Jesse]."

Chapter V, Article 25 of the Convention states as follows:

> Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.

Jesse cites no authority supporting his interpretation of Article 25, nor are we aware of any such authority. Moreover, we were unable to locate any cases interpreting this

9

Article.  However, we have reviewed the explanatory report of Elisa Perez-Vera, the official Hague Conference reporter, which is "recognized by the Conference as the official history and commentary on the meaning of the provisions of the Convention available to all States becoming parties to it."  Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494, 10503 (Mar. 26, 1986).  This resource provides helpful insight into the meaning of Article 25.

The Convention requires each contracting state to designate a "Central Authority" to discharge the duties imposed by the Convention upon such authorities.  Hague Convention, Ch. II, Art. 6.  "Central Authorities" are required to take all appropriate measures to secure the prompt return of children and to achieve the other objects of the Convention.  Hague Convention, Ch. II, Art. 7.  This includes, where the circumstances so require, providing or facilitating the provision of legal aid and advice, including the participation of legal counsel and advisers.  Hague Convention, Ch. II, Art. 7(g).  The Perez-Vera report explains that

> [w]hen it is necessary, in order to obtain the child's return, for the judicial or administrative authorities of the State in which it is located to intervene, the Central Authority must itself initiate proceedings (if that can be done under its internal law) or facilitate the institution of proceedings.  This duty also extends to proceedings which prove to be necessary for organizing or securing the effective exercise of rights of access.
> . . . .
>
> Where the Central Authority is not able to apply directly to the competent authorities in its own State, it must provide or facilitate the provision of legal aid and advice for the applicant, in terms of [A]rticle 25 ([Ch. II, Art. 7,] sub-paragraph g).  It is appropriate to point out here very briefly that the phrase 'where the circumstances so require' in this sub-paragraph refers to the applicant's lack of economic resources, as determined by the criteria laid down by the law of the State in which such assistance is sought, and that it does not therefore refer to abstract considerations as to the convenience or otherwise of granting legal aid.

Eliza Perez-Vera, *Hague Conference on Private International Law*, paras. 95-96, p. 40 (1982), *available at* http://www.hiltonhouse.com/articles/Perez_rpt.txt.  As to Article 25, the Perez-Vera report states that

> [t]he relevant provision here enlarges the scope of legal aid in two respects.  Firstly,  it includes among the possible beneficiaries persons habitually resident in a Contracting State as well as that State's own nationals.  Secondly, the legal aid available is extended to cover legal advice as well, which is not invariably included in the various systems of legal aid operated by States.

*Id.*, para. 133, p. 52.

Another source of information is the Office of Children's Issues, which acts as the Central Authority for the United States. In its analysis of the Convention, the Office states that "Article 25 provides for the extension of legal aid and advice to foreign applicants on the same basis and subject only to the same eligibility requirements as for nationals of the country in which that aid is sought."[7] International Child Abduction, Office of Children's Issues, United States Department of State, ***The Hague Convention on the Civil Aspects of International Child Abduction***, http//travel.state.gov/pdf/Legal_ Analysis_of_the_Convention.pdf (last visited Feb. 25, 2010). This is consistent with the information in the Perez-Vela report.

The above information, read together with Article 25, supports a conclusion that the legal aid contemplated by Article 25 is that necessary to facilitate an applicant's request for relief under the Hague Convention when a Central Authority cannot apply directly for the child's return. We have been unable to locate any authority to suggest that Article 25 creates an exception to the limited application of the Convention as stated in Chapter I, Article 4. Accordingly, we cannot agree with Jesse's construction of Article 25.

Finally, Jesse cites a case involving a jurisdictional dispute between Texas and California. The dispute arose from a California custody order and a subsequent custody dispute between an American citizen and a Chilean citizen, both of whom were living in the United States. *See **Saavedra v. Schmidt***, 96 S.W.3d 533, 535-36 (Tex. App.–Austin 2002, no pet.). The Texas court relied, in part, on the Hague Convention for exercising jurisdiction and cited the Convention in refusing to enforce the California court's custody determination. *Id.* at 542. In choosing to apply the Convention, the trial court relied on a prior California order in which the parties agreed to be bound by the Convention. *Id.* The Austin court of appeals held that despite the parties' agreement, the Convention did not govern the jurisdictional dispute between the two states. *Id*. at 543. The court also stated that

---

[7] As an aside, we note that in its analysis of the Convention, but not Article 25 specifically, the Office of Children's Issues relies heavily on the Perez-Vela report.

11

> the parties presumably entered into this agreement because Saavedra is a citizen of Chile. If the controversy here were international in nature, there is no dispute that the parties would be bound by the Convention with or without their agreement, as Chile is a signatory to the Convention.

*Id.* at 542 n.13. Jesse emphasizes that "in making this pronouncement, the court focused not on the residence, but the citizenship, of the parents." However, this statement is dicta, and is unsupported by authority or analysis. Therefore, we do not find it persuasive.

**Conclusion**

We have carefully considered Jesse's arguments and authorities and are not unsympathetic to his circumstances. But based upon the foregoing analysis, we are persuaded that the Hague Convention is not applicable to this case. Therefore, we hold that the Hague Convention did not provide the trial court with subject matter jurisdiction to enter the emergency orders.

## TEMPORARY EMERGENCY JURISDICTION

Jesse argues, in the alternative, that the trial court had temporary emergency jurisdiction under Texas Family Code section 152.204. A trial court has temporary emergency jurisdiction if a child is present in this state and has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse. TEX. FAMILY CODE ANN. § 152.204(a) (Vernon 2008). As such, temporary emergency jurisdiction is reserved for extraordinary circumstances. *Saavedra*, 96 S.W.3d at 545.

There is nothing in the record before us that supports the trial court's exercise of temporary emergency jurisdiction under section 152.204. There was no evidence that the children had been abandoned, or that either Mava or the children had been subjected to or threatened with mistreatment or abuse. Accordingly, we hold that section 152.204 did not provide the subject matter jurisdiction necessary for the trial court to enter the emergency orders.

## CONCLUSION

The trial court cited Texas Family Code section 152.204 and the Hague Convention as grounds for its exercise of jurisdiction to enter the emergency orders.

However, we have held that neither provides the subject matter jurisdiction necessary for the trial court to issue the orders. Therefore, the emergency orders are void, and constitute an abuse of the trial court's discretion. Because the orders are void, we do not address whether appeal is an adequate remedy. Accordingly, we conditionally grant the writ of mandamus as to the emergency orders. Based upon the trial court's lack of jurisdiction, we deny the petition as to Jesse's request for an order that he recover his attorney's fees. Jesse has not shown that he is entitled to the injunction he has requested. Therefore, his request for an injunction is overruled. We are confident that, within fifteen days of this opinion and order, the respondent will issue an order vacating the emergency orders insofar as they pertain to the $50,000 deposit for Mava's benefit, the award of Mava's attorney's fees, and the denial of Jesse's attorney's fees, and directing that the $50,000 deposit be disbursed to Jesse. The writ will issue only if she fails to do so.[8] Our stay is lifted.

__BRIAN HOYLE__
Justice

Opinion delivered March 2, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[8] The unchallenged portion of the trial court's December 22, 2008 order relates to the children. As noted earlier, a hearing was scheduled in Burundi for January 26, 2009 to address custody and visitation. We have no information that causes us to conclude these issues have not been resolved by the Burundi court.