# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00311-CV

---

**Joseph Mugisha, Appellant**

**v.**

**Brianna McLeod, Appellee**

---

**FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY**
**NO. 24-0066-F425, THE HONORABLE BETSY F. LAMBETH, JUDGE PRESIDING**

---

## O P I N I O N

This is an appeal from a default final order in a suit affecting the parent-child relationship (SAPCR) and for child support. We must determine whether the trial court had personal jurisdiction over Joseph Mugisha and jurisdiction under the Uniform Interstate Family Support Act (UIFSA) and properly ordered him to pay child support. We must also determine whether the trial court had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) to determine that it was in the children's best interests for Brianna McLeod to be appointed as the sole managing conservator and for Mugisha's possession to be supervised. We conclude that the trial court could exercise personal jurisdiction over Mugisha to order payment of child support but that insufficient evidence supported the trial court's findings regarding Mugisha's net pay. We further conclude that the trial court lacked sufficient evidence to apply subsection 152.105(c) of the UCCJEA to render a final custody

order. We will therefore affirm in part, vacate in part, and reverse and remand for further proceedings.

## BACKGROUND

Mugisha, a Ugandan citizen, met McLeod, a U.S. citizen, in Seattle, Washington, while Mugisha was working for Microsoft. Together, they moved to Dubai, United Arab Emirates, but traveled to Las Vegas, Nevada in 2014 to be married. Their first child was born in Dubai in 2015. That same year, they moved from Dubai to Uganda, where McLeod opened a furniture store. The couple had a second child, who was born in Kenya (though the couple lived in Uganda) in 2019. Mugisha now works remotely for Microsoft.

On December 14, 2023, McLeod took the children from Uganda to Texas to visit her sister. Rather than returning to Uganda as planned, she and the children remained in Texas. She filed the underlying SAPCR on January 8, 2024, and attached to her petition two affidavits and select information about Uganda. Mugisha was served with the suit on January 18. On January 22, the court held a hearing that Mugisha did not attend; the court rendered temporary orders appointing McLeod temporary sole managing conservator and Mugisha temporary possessory conservator. Pursuant to the temporary orders, Mugisha was to pay $1915.50 per month in child support, which was to be withheld from his earnings. The temporary orders cite Texas Family Code section 152.204 and article 13(b) of the Hague Convention on the Civil Aspects of International Child Abduction as bases for the trial court's jurisdiction. On February 7, 2024, the trial court signed an income-withholding order. That same day, Mugisha filed a petition for divorce in the High Court of Uganda (Family Division), Holden at Kampala. His petition requested that he be granted joint custody of the children.

2

Mugisha filed a special appearance on March 5, 2024, in the Texas suit. Immediately after filing that pleading, he filed a plea to the jurisdiction in which he argued that the trial court lacked subject-matter jurisdiction over the children; argued in the alternative that Texas was an inappropriate and inconvenient forum; and, subject to his special appearance and plea to the jurisdiction, asked the trial court to stay proceedings to communicate with the Ugandan court. *See* Tex. Fam. Code § 152.204(d). McLeod filed a response to the petition in the Uganda divorce suit on March 7. On April 16, the Texas trial court heard Mugisha's plea to the jurisdiction. Mugisha appeared virtually. His counsel argued the substance of Mugisha's plea to the jurisdiction, urging that the children "have a wonderful life in Uganda and they need to be returned to Uganda" and that under section 152.204, "the Court has to then, because of simultaneous proceedings, stay the proceeding, communicate with the Ugandan court and issue a limited finite ruling here in Texas." Although Mugisha's special appearance was mentioned, no arguments were made relating to the special appearance. Mugisha's counsel mentioned that he was prepared to present evidence relating to jurisdiction under the UCCJEA, but no evidence was taken at the hearing. Instead, the following exchange occurred:

> The Court: So to recap, what I will want you all to do is to specifically brief the issue of whether or not the Hague Convention applies and what evidence you would like to submit.
>
> [Counsel for Mugisha]: Not submitting it, just what you would like to submit?
>
> The Court: Right. And you can recap, if you want to, what we've already discussed here.

The parties later each submitted briefs containing their versions of the facts of the case in addition to various legal arguments. In October 2024, the Texas trial court issued "findings of fact" relating to the April 16 hearing and then signed an order denying the plea. Among the

3

findings were that "that the child custody law of Uganda violates fundamental principles of human rights. As such, pursuant to Texas Family Code 152.105(c), the Court declines to apply Texas Family Code 152.204(b) through (d) and section 152.206."

Mugisha's counsel filed a motion to withdraw from the Texas case in December 2024. The motion noted that a final hearing was set for February 7, 2025. The trial court granted the motion to withdraw, signing an agreed order, which noted that (1) the motion to withdraw had been delivered to Mugisha; (2) the final trial was scheduled for February 7, 2025; and (3) Mugisha had been notified of his right to object to the motion. Mugisha, subject to his special appearance, had signed the order on the motion to withdraw, but he did not appear at the February 7 final hearing. McLeod attended and testified at the final hearing, after which the trial court signed a default order appointing McLeod sole managing conservator and Mugisha possessory conservator of the children with the right to supervised visitation, granting a judgment for child-support arrearages against Mugisha in the amount of $24,901.50, and ordering him to pay child support of $2300.00 per month beginning in March 2025. At Mugisha's request, the trial court signed findings of fact and conclusions of law relating to the SAPCR order in April 2025. Mugisha appeals.

## DISCUSSION

Mugisha challenges the trial court's final order in four issues: (1) the trial court "erred in determining that it had subject matter jurisdiction to render conservatorship and possession orders for the children"[1]; (2) assuming the court had jurisdiction under the UCCJEA,

---

[1] The Texas Supreme Court has observed "that of the states that have considered the jurisdictional issue, some refer to the UCCJEA as a subject-matter-jurisdiction statute, while others do not. The issue is not settled." *See In re D.S.*, 602 S.W.3d 504, 517–18 (Tex. 2020)

it "erred in determining that it would be in the best interest of the child[ren] for Mother to [be] appointed as the sole managing conservator of the children and for Father's periods of possession to supervised"; (3) the court "erred in determining that it had personal jurisdiction over Father to render an order for Father to pay child support"; and (4) assuming the court had personal jurisdiction over Mugisha, it "erred in calculating Father's net resources and ordering child support." We will address Mugisha's issues relating to personal jurisdiction and child support first, then turn to his arguments relating to child custody.

**Personal jurisdiction and jurisdiction under UIFSA**

In his third issue, Mugisha challenges the trial court's conclusion that it had personal jurisdiction over him.[2] Whether a Texas court has personal jurisdiction over a nonresident defendant is a legal question that we review de novo. *Luciano*

---

(citations omitted). Although the court did not resolve the issue, it noted that courts had not explained why they treat the UCCJEA's requirements as jurisdictional. *Id.* at 517 n.83. The concurring justices would have reached the issue and would "treat a court's erroneous application of the UCCJEA's requirements as . . . error, not lack of subject matter jurisdiction." *Id.* at 520–21 (Lehrmann, J., concurring). This Court has treated the UCCJEA as conferring "subject-matter jurisdiction on Texas courts to decide initial matters of child custody only if certain prerequisites are met." *In re K.M.P.*, 323 S.W.3d 601, 604–05 (Tex. App.—Austin 2010, pet. denied).

[2] Mugisha urges, in relation to this issue and others, that McLeod has "inadequately briefed" certain arguments on appeal. But it is appellant's burden to establish reversible error on appeal; an appellee is not required to file a brief. *See* Tex. R. App. P. 44.1(a); *Thompson v. Buechler*, No. 03-22-00034-CV, 2023 WL 4770427, at *11 n.16 (Tex. App.—Austin July 27, 2023, pet. denied) (mem. op.); *Gonzalez v. Gonzalez*, No. 04-20-00226-CV, 2021 WL 6127931, at *2 n.3 (Tex. App.—San Antonio Dec. 29, 2021, no pet.) (mem. op.); *B.C. v. Steak N Shake Operations, Inc.*, 613 S.W.3d 338, 345 n.9 (Tex. App.—Dallas 2020, no pet.) (Schenck, J., concurring in court's denial of en banc reconsideration); *Hamilton Metals, Inc. v. Global Metal Servs., Ltd.*, 597 S.W.3d 870, 878 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *see Spencer v. Gilbert*, No. 03-09-00207-CV, 2010 WL 3064346, at *2 (Tex. App.—Austin Aug. 4, 2010, pet. dism'd w.o.j.) (mem. op.) ("[A]ppellee's failure to contradict issues presented does not lead to concession of error through some sort of appellate default judgment").

*v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). Texas Rule of Civil Procedure

120a addresses the procedures for making and contesting special appearances. Under the rule,

> a special appearance may be made by any party either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State. A special appearance may be made as to an entire proceeding or as to any severable claim involved therein. . . . Every appearance, prior to judgment, not in compliance with this rule is a general appearance.

Tex. R. Civ. P. 120a(1). Mugisha did not file an answer but filed a special appearance. His

special appearance does not indicate that it is limited to any particular claims, and he did not

argue in the trial court or in this Court that McLeod's claims for child support can or should

be severed from her custody claims. Accordingly, we construe the special appearance as

challenging the "entire proceeding." *Id.*; *see Cappuccitti v. Gulf Indus. Prods., Inc.*,

222 S.W.3d 468, 480 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (when defendants did not

assert that specific claims were severable and make their special appearances only as to those

claims, question for court was whether special appearance was warranted as to

entire proceeding).

"[A] special appearance is waived through participation in the trial." *Milacron*

*Inc. v. Performance Rail Tie, L.P.*, 262 S.W.3d 872, 875 (Tex. App.—Texarkana 2008, no pet.)

(citing *Bullock v. Briggs*, 623 S.W.2d 508, 511 (Tex. App.—Austin 1981, writ ref'd n.r.e.)).

Rule 120a requires the specially appearing defendant to "timely request a hearing, specifically

bring that request to the trial court's attention, and secure a ruling on the preliminary question of

personal jurisdiction." *Id.* (citing *Hart v. State*, No. 03–02–00542–CV, 2003 WL 549273, at *2

(Tex. App.—Austin Feb. 27, 2003, no pet.) (mem. op.)). The record does not contain a notice of

hearing for Mugisha's special appearance, and none of the orders in the record purport to rule on the special appearance. Mugisha argues that the special appearance was not waived because the trial court wrote, in its findings of fact and conclusions of law issued after the hearing on the plea to the jurisdiction, that:

> The Court hereby finds that Respondent has availed himself of the protections and benefits of the laws of the United States throughout his entire adult life, that he possesses sufficient means to hire counsel in Texas and to travel to Texas, and it would not cause him a hardship to participate in this litigation.

While the content of this finding seems possibly related to personal jurisdiction under Rule 120a, the finding also appears applicable to Mugisha's argument that Texas is an "inappropriate" and inconvenient forum, which he asserted as an alternative argument in his plea to the jurisdiction. As Mugisha observes in his reply brief, however, the trial court issued the following findings that expressly mention the special appearance:

> 11. On April 16, 2024, the Court conducted a hearing on Respondent's *Special Appearance* and *Plea to the Jurisdiction, Motion to Decline Jurisdiction, and Motion to Stay.* Respondent appeared remotely at this hearing by agreement.
>
> 12. The court permitted additional briefing on Respondent's *Special Appearance* and *Plea to the Jurisdiction, Motion to Decline Jurisdiction, and Motion to Stay.*
>
> 13. On October 22, 2024, the court denied the *Special Appearance* and *Plea to the Jurisdiction, Motion to Decline Jurisdiction, and Motion to Stay.*

But the October 22 order, after noting the appearance of the parties and their counsel, states:

> Upon taking judicial notice of the file, the receipt and review of the parties' respective briefs filed with the Court, and upon hearing the argument of counsel, the Court is of the opinion that Texas has jurisdiction over the children the subject of this suit. The Court ORDERS that it has jurisdiction over the children the subject of this suit.

7

The Court hereby denies Respondent's request for a stay.

Accordingly, it is ORDERED that *Joseph Mugisha's Plea to the Jurisdiction, Motion to Decline Jurisdiction and Motion to Stay* is DENIED in its entirety.

Thus, the order does not address the special appearance, nor does any other order in the record do so, and no ruling on the special appearance was announced in the reporter's records contained in the appellate record. Further, the record of the hearing on the plea to the jurisdiction, in which Mugisha challenged the applicability of the UCCJEA, gives no indication that the special appearance was being heard that day; no arguments relating to the special appearance were presented. We conclude that, having sought relief at the hearing on the plea to the jurisdiction and without having secured a ruling on the special appearance, Mugisha generally appeared and waived his special appearance. *See* Tex. R. Civ. P. 120a(2); *see also In re H & R Block*, 159 S.W.3d 127, 131–32 (Tex. App.—Corpus Christi–Edinburg 2004, orig. proceeding) (determining that trial court abused its discretion by denying motion for continuance that would have allowed special appearance to be heard before plea to the jurisdiction and motion to transfer venue). As a result, we conclude that Mugisha submitted to the jurisdiction of this state "by entering a general appearance" under UIFSA. Tex. Fam. Code § 159.201(2). We overrule Mugisha's third issue.

**Child support**

We next turn to Mugisha's fourth issue, which challenges the sufficiency of the evidence supporting the trial court's calculation of his net resources. "A court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *see also Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993). A trial court abuses its discretion

8

when it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *See Worford*, 801 S.W.2d at 109; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court also abuses its discretion by failing to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

Under this abuse-of-discretion standard as applied here, legal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Norris v. Norris*, No. 03-12-00108-CV, 2013 WL 812110, at *3 (Tex. App.—Austin Feb. 27, 2013, no pet.) (mem. op.) (citing *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.)). "We engage in a two-pronged inquiry, determining whether (1) the trial court had sufficient evidence upon which to exercise its discretion; and (2) the trial court erred in its application of that discretion." *Id.* (citing *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied)). We apply traditional evidentiary-sufficiency review standards when considering the first question, then we consider whether the trial court made a decision, based on the evidence, that was arbitrary or unreasonable. *Id.* We view the evidence in the light most favorable to the trial court's decision. *Id.* (citing *In re J.D.D.*, 242 S.W.3d 916, 920 (Tex. App.—Dallas 2008, pet. denied)).

Chapter 154 of the family code governs child-support proceedings and sets forth guidelines to apply in determining an equitable amount of child support. *See* Tex. Fam. Code §§ 154.001–.309. Under chapter 154, the trial court "shall calculate net resources for the purpose of determining child support liability as provided by this section." *Id.* § 154.062(a). "Net resources" includes all wage and salary income, self-employment income, and all other income actually received. *Id.* § 154.062(b). "There must be some evidence of a substantive and probative character of net resources in order for the court to discharge its duty under section

9

154.062." *Miles v. Peacock*, 229 S.W.3d 384, 389 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Absent evidence of a party's resources defined by subsection 154.062(b), "the court shall presume that the party has income equal to the federal minimum wage for a 40-hour week to which the support guidelines may be applied." Tex. Fam. Code § 154.068(a).

McLeod testified that Mugisha worked at Microsoft. A January 11, 2024 letter from Microsoft's Nairobi, Kenya, office was admitted into evidence, showing that he worked for a Microsoft as a senior product manager starting in 2021. Also admitted into evidence was a printout of a page from the website glassdoor.com showing the "estimated total pay range" for Microsoft senior product manager in the United States as "$235K–$345K/yr" with a base salary of "$189K per year." It also included a "Base Pay" range of "$165K–$215K." McLeod testified that she did not know Mugisha's salary, but he had told her when he rejoined Microsoft that he "wasn't going to take anything lower than what he made in the U.S. previously." Based on that evidence, counsel asked McLeod, "So if the cap for child support in the State of Texas is $9,200 net per month in income, is it your belief he far exceeds that?" McLeod responded, "Yes."

The salary range admitted into evidence was for a position based in the United States. The employment letter shows that Mugisha was employed through an office in Nairobi, Kenya. Although McLeod testified that Mugisha said he would not "take anything lower than what he made in the U.S. previously," nothing reflects the point in time that was the basis for that comparison—the evidence at trial does not show that Mugisha worked continuously at Microsoft from 2011 forward, so the amount of money Mugisha made "previously," as early as 2011, could vary greatly from the salaries paid in the United States in 2024. On these facts, we conclude that the trial court abused its discretion in awarding child support at the maximum amount allowed by the guidelines.

10

Mugisha asserts that the current record supports only the presumption that he earned minimum wage, and asserts that in this posture, remand would be appropriate. We agree. The family code requires consideration of multiple factors in calculating child support. In addition to calculating net resources, the court must determine the percentage of net resources that a non-custodial parent would pay under the guidelines and consider whether any additional factors would justify varying from the guidelines. *Id.* § 154.121 ("the child support guidelines . . . are intended to guide the court in determining an equitable amount of child support"); *see also id.* §§ 154.122 (permitting court to determine that application of guidelines would be unjust or inappropriate), .123 (listing factors for court to consider in deciding whether to impose support obligation differing from amount calculated under family-code guidelines). Accordingly, we sustain Mugisha's third issue and remand the case to the trial court for further proceedings on the determination of Mugisha's net resources and child-support obligations. *See Office of Att'y Gen. of Tex. v. Burton*, 369 S.W.3d 173, 174 (Tex. 2012) (per curiam) (concluding that no evidence supported trial-court judgment in suit to confirm child-support arrearage and remanding case to trial court for further proceedings); *Marquez v. Moncada*, 388 S.W.3d 736, 740–41 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (noting factors courts must consider in calculating child support and declining to render judgment based on minimum-wage presumption).

**Jurisdiction under the UCCJEA**

In his first issue, Mugisha asserts that the trial court lacked jurisdiction under the UCCJEA to determine custody and visitation. Although we determined that Mugisha was subject to the court's jurisdiction under UIFSA, "the court's jurisdiction to hear a child support

issue does not confer jurisdiction upon that court to determine issues of custody or visitation." *In re Salminen*, 492 S.W.3d 31, 40 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) (noting that "United States Supreme Court has established that the bases of jurisdiction in interstate child support cases are different from the interstate child custody cases"). The UCCJEA, codified in chapter 152 of the Family Code, governs foreign and interstate child-custody jurisdictional disputes in Texas. *In re C.J.S.*, 702 S.W.3d 573, 591 (Tex. App.—Houston [1st Dist.] 2024, no pet.); *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 313 (Tex. App.—Dallas 2008, no pet.) (stating that UCCJEA is "exclusive jurisdictional basis for making a child custody determination by a court of this state"); *see* Tex. Fam. Code §§ 152.201–.209 ("Jurisdiction"). Whether a trial court has jurisdiction under the UCCJEA is a question of law that we review de novo. *Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005) (orig. proceeding) ("Construction of the UCCJEA's 'home state' provision as codified in the Texas Family Code is a question of law that we review de novo."); *Saavedra v. Schmidt*, 96 S.W.3d 533, 541 (Tex. App.—Austin 2002, no pet.); *see Sampson v. University of Tex. at Aus.*, 500 S.W.3d 380, 384 (Tex. 2016) (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)). The party who initiates the suit has the burden to allege facts affirmatively demonstrating the trial court's authority to hear the case. *Cortez v. Cortez*, 639 S.W.3d 298, 306 (Tex. App.—Houston [1st Dist.] 2021, no pet.). "We construe the pleadings in favor of the party invoking jurisdiction and consider relevant evidence when necessary to resolve the jurisdictional issue." *Id.* "We defer to a trial court's findings of fact if the findings are supported by sufficient evidence." *In re C.J.S.*, 702 S.W.3d at 595 (citing *In re T.D.L.*, 621 S.W.3d 346, 352 (Tex. App.—San Antonio 2021, no pet.)).

In entering temporary orders, the trial court explained that it was exercising jurisdiction under subsection 152.204(a) of the UCCJEA "because the children are present in Texas, and it is necessary to protect the children because the children are subject to or threatened with mistreatment or abuse if they are returned to their home country of Uganda." The court determined that it "further has jurisdiction to make a child custody determination in this case under Article 13(b) of the Hague Convention on the Civil Aspects of International Child Abduction" because "there is a grave risk that to return the child to Uganda and to the custody of their father would expose the children to physical and/or psychological harm and/or place the children in an intolerable situation." The trial court similarly relied on section 152.204 of the UCCJEA and article 13(b) of the Hague Convention as its bases for jurisdiction in denying Mugisha's plea to the jurisdiction. At the final hearing, McLeod's counsel asked about the fact that the divorce suit was pending in Uganda, and then had the following exchange with McLeod, which involved the sole mention of jurisdiction at the final hearing:

> [Counsel:] But in this case we've already gone through jurisdictional hearings and the Court has found jurisdiction to make orders regarding the children, correct?
>
> [McLeod:] Correct.
>
> [Counsel:] And are you asking for those orders to be finalized today?
>
> [McLeod:] Yes, ma'am.

Subsection 152.204(a) provides: "A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with

13

mistreatment or abuse."[3] Tex. Fam. Code § 152.204(a). In such a case, the district court is empowered to act on a short-term, temporary, emergency basis when the potential for immediate harm exists. *In re Salminen*, 492 S.W.3d at 40. The exercise of jurisdiction under section 152.204 is reserved for extraordinary circumstances. *Id*.; *Saavedra*, 96 S.W.3d 533 at 545.

The parties agree, and the trial court's findings of fact indicate, that the UCCJEA provided the trial court's stated basis for jurisdiction at the time of the final hearing. Typically, when a trial court acts pursuant to subsection 152.204(a), the trial court must first determine whether another child-custody determination was pending under subsections 152.204(b)–(d). *See* Tex. Fam. Code § 152.204(a). Subsection 152.204(b) provides:

> If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 152.201 through 152.203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

*Id.* § 152.204(b). Section 152.204(d) further requires that a Texas court, "upon being informed that a child custody proceeding has been commenced in or a child custody determination has been made by a court of a state having jurisdiction under Sections 152.201 through 152.203, shall immediately communicate with the other court." *Id.* § 152.204(d). As relevant here, section 152.201 provides that the child's home state—where the child lived for the six months preceding the suit—has jurisdiction over the custody dispute. *Id.* § 152.201; *see id.* § 152.105(a) ("A court of this state shall treat a foreign country as if it were a state of the United States for the

---

[3] Chapter 152 of the Family Code does not define "mistreatment" or "abuse."

14

purpose of applying this subchapter and Subchapter C.").  Here, the trial court declined to apply the full requirements of chapter 152, citing subsection 152.105(c), which allows a "court of this state" to "not apply this chapter if the child custody law of a foreign country violates fundamental principles of human rights."

Mugisha asserts that the trial court's findings in support of its jurisdiction under the UCCJEA, including its finding that Uganda's child-custody law violates fundamental principles of human rights, are not supported by legally or factually sufficient evidence.  We agree.  We note that the record reflects Mugisha did not file an answer.  Failure to file an answer usually means that a defendant admitted the allegations in the petition, with the result that the plaintiff can obtain a default judgment on her pleadings alone.  *See Rouhana v. Ramirez*, 556 S.W.3d 472, 476–77 (Tex. App.—El Paso 2018, no pet.) (discussing effects of no-answer and post-answer default judgments).  However, because conservatorship of children is involved, we determine that, notwithstanding Mugisha's failure to answer, McLeod had to present evidence to support her case.  "In other no-answer contexts involving family-law matters, plaintiffs are required to present evidence."  *In re J.G.*, No. 02-22-00258-CV, 2023 WL 2179463, at *7 (Tex. App.—Fort Worth Feb. 23, 2023, no pet.) (mem. op.); *Abila v. Miller*, 683 S.W.3d 842, 847 (Tex. App.—Austin 2023, no pet.); *Agraz v. Carnley*, 143 S.W.3d 547, 553 (Tex. App.—Dallas 2004, no pet.); *Considine v. Considine*, 726 S.W.2d 253, 254 (Tex. App.—Austin 1987, no writ); *see also Williams v. Williams*, 150 S.W.3d 436, 446–47 (Tex. App.—Austin 2004, pet. denied).

At the final hearing, McLeod did not provide any testimony regarding conditions at the couple's former home or in Uganda generally.  She testified that Mugisha did not visit the children and had not been involved in any decisions she had made for the children since

15

December 2023, when she took the children with her to Texas, and that when she initiated contact with him, she did not "hear anything back other than through the courts." McLeod offered no evidence that Mugisha had ever mistreated or abused the children; the only testimony regarding Mugisha's treatment of the children, other than his absence from their lives since they left Uganda, was that the children were "confused and upset and quiet" when Mugisha advised them to "ask your mom why you're not going back to Uganda, ask her, see what she says, tell me what she says." McLeod introduced three exhibits, all of which were admitted: (1) a return showing Mugisha had been served with the Texas lawsuit, (2) a 2024 letter from Microsoft's Nairobi, Kenya, office certifying that Mugisha had been employed with that office since 2021 and that he was a senior product manager, and (3) a printout of a page from the website glassdoor.com showing the "estimated total pay range" for a Microsoft senior product manager.

Neither the testimony nor the exhibits from the final hearing related to any of the trial court's jurisdictional findings, which ranged from specific findings regarding crimes committed at the couple's home to general issues with Uganda, such as the prevalence of malaria. Instead, the trial court seems to have relied on arguments and evidence from the previous hearings in the case, as the trial court stated in the first of its "Findings Concerning Jurisdiction" that "The court took judicial notice of its file, as set forth in its *Findings of Fact* dated October 23, 2024." The entirety of the October findings is reproduced here:

> Upon taking judicial notice of the file, the receipt and review of the parties' respective briefs filed with the Court, and upon hearing the argument of counsel, the Court rendered a judgment that Texas has jurisdiction of the children of this suit.
>
> The Court hereby finds that the children are physically present in this State and assumption of jurisdiction is necessary to protect such children because the children and/or Petitioner are subjected to or threatened with mistreatment or

16

abuse in Uganda. The Court further finds that the child custody law of Uganda violates fundamental principles of human rights. As such, pursuant to Texas Family Code 152.105(c), the Court declines to apply Texas Family Code 152.204(b) through (d) and section 152.206.

Further, this Court finds that Petitioner and the children are U.S. citizens, and that they are entitled to protection pursuant to the 14th Amendment of the U.S. Constitution.

The Court hereby finds that Respondent has availed himself of the protections and benefits of the laws of the United States throughout his entire adult life, that he possesses sufficient means to hire counsel in Texas and to travel to Texas, and it would not cause him a hardship to participate in this litigation.

The Court hereby finds that Texas is an appropriate forum for this case.

The Court finds that Petitioner has not engaged in unjustifiable conduct.

The October findings were signed following the hearing on the plea to the jurisdiction, at which no evidence or testimony was taken. Regarding judicial notice, this Court has explained:

> On the one hand, it is well established that "a court may take judicial notice of its own records." *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 508 (Tex. App.—Austin 1994, no pet.). "However, judicial notice usually is limited to matters that are generally known or easily proven and that cannot reasonably be disputed." *Id.* For example, a court may take judicial notice that a pleading has been filed in the case or of the law of another jurisdiction. *Id.* On the other hand, "a court may not [ ] take judicial notice of the truth of allegations in its records." *Id.* Thus, "the trial court may not take judicial notice of the *truth* of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file." *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Similarly, "[i]t is inappropriate for a trial judge to take judicial notice of testimony" from prior proceedings in the same case. *Id.* "In order for testimony from a prior hearing or trial to be considered in a subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into evidence." *Id.* "When evidence is the subject of improper judicial notice, it amounts to no evidence." *Id.*

*Abila*, 683 S.W.3d at 849; *see* Tex. R. Evid. 201 ("Judicial Notice of Adjudicative Facts").

Under this standard, the trial court could not take judicial notice of the truth of any facts that

could be reasonably disputed that were contained in McLeod's testimony at the hearing on temporary orders or of the allegations in McLeod's pleadings, their attachments, or the brief she submitted to the court following the hearing on jurisdiction.

McLeod contends that the briefs submitted by the parties following the hearing on the plea to the jurisdiction contained written testimony that presented "all of the evidence" the parties wanted the trial court to consider. Even if we agreed that such briefs were "no different than if [they] had testified as to the relevant facts at a hearing," as we said in *Abila*, courts cannot take judicial notice of testimony from prior hearings unless the transcript is properly authenticated and entered into evidence. *Abila*, 683 S.W.3d at 849; *see B.L.M. v. J.H.M., III*, No. 03–14–00050–CV, 2014 WL 3562559, at *11 (Tex. App.—Austin July 17, 2014, pet. denied) (mem. op.) ("A court may take judicial notice of the existence of pleadings and other documents that have been filed in a case, but the court cannot take judicial notice of the truth of allegations in those documents unless they have been admitted into evidence."). No evidence or testimony from the prior hearings was authenticated or offered into evidence at the final hearing.

Nor did the trial court consider the child custody laws of Uganda sua sponte under the Texas Rules of Evidence. Rule 203 of the Texas Rules of Evidence governs the process for taking judicial notice of the laws of other countries. Tex. R. Evid. 203; *In re D.W.*, No. 02-13-00293-CV, 2015 WL 1262820, at *1–3 (Tex. App.—Fort Worth Mar. 19, 2015, no pet.) (mem. op.). "Rule 203 is a hybrid rule by which the presentation of the law to the court resembles the presentment of evidence but which ultimately is decided as a question of law." *Lawrenson v. Global Marine, Inc.*, 869 S.W.2d 519, 525 (Tex. App.—Texarkana 1993, writ denied). Rule 203 provides that a "court may consider any material or source, whether or not admissible." Tex. R. Evid. 203(c). To consider a source not submitted by a party, the court

18

"must give all parties notice and a reasonable opportunity to comment and submit additional materials." The record does not reflect any such notice. Thus, trial court necessarily based the ruling on the materials offered by the parties.

Rule 203 also provides that a party who intends to raise an issue concerning the law of a foreign country shall give notice in her pleadings or other written notice at least thirty days prior to the date of the trial and also shall furnish the parties with written material or sources that she intends to use as proof of the foreign law. *Id.* R. 203(a)(2). As it relates to section 152.105, McLeod asserted in her brief submitted to the court following the hearing on the plea to the jurisdiction that the Uganda custody laws that violate fundamental principles of human rights are provisions of the Uganda Divorce Act that (1) specify the age of majority is fifteen for boys and thirteen for girls and (2) that wives' grounds for divorce are more stringent than those for husbands. McLeod provided no other written materials or sources regarding the Divorce Act aside from these mentions in her brief on the jurisdictional plea. Assuming the provisions referenced by McLeod are custody laws that violate fundamental principles of human rights, we nonetheless conclude that McLeod's excerpts of the statute in her brief and her argument that the terms of the Divorce Act "violate fundamental principles of human rights on its face, based on the rights that we enjoy as set forth in the United States Constitution" are not written materials or sources within the meaning of Rule 203. *See id.*; *see also PennWell Corp. v. Ken Assoc., Inc.*, 123 S.W.3d 756, 762 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (addressing sufficiency of information to allow trial court to determine foreign law).

On this record, we conclude that the trial court's findings relating to its jurisdiction under the UCCJEA were not supported by sufficient evidence. *See In re C.J.S.*,

702 S.W.3d at 595.[4]  Consequently, the trial court erred in applying section 152.105(c) to avoid the remaining requirements of chapter 152.  We therefore reverse the portion of the trial court's final order relating to child custody under the UCCJEA; that portion of the trial court's order is void.  Having sustained his first issue, we need not address Mugisha's second issue.

## CONCLUSION

For these reasons, we affirm the trial court's final order as to the finding of personal jurisdiction over Mugisha and jurisdiction under UIFSA; reverse the child-support order requiring Mugisha to pay $2300 monthly beginning in March 2025; reverse the order as to the finding of jurisdiction under the UCCJEA; vacate the portions of the order relating to child custody and access; and remand the case to the trial court for further proceedings consistent with this opinion.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Theofanis and Crump

Affirmed in Part; Reversed and Remanded in Part; Vacated in Part

Filed:  May 29, 2026

---

[4] To the extent that the trial court could rely on article 13(b) of the Hague Convention on the Civil Aspects of International Child Abduction as a basis for exercising jurisdiction, we note that article 13(b) provides that a court is not bound to order return of a child when there is a "grave risk" that return will expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.  For the same reasons we determine that the evidence was insufficient to support the trial court's findings under the UCCJEA, the evidence would also be insufficient to support a finding of "grave risk" of harm or an intolerable situation under article 13(b).